**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HARVEST SHERWOOD FOOD<br>DISTRIBUTORS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-80109<br><br>(Jointly Administered) |

**GLOBAL NOTES AND STATEMENT OF LIMITATIONS,
METHODOLOGY, DISCLAIMER, AND SPECIFIC
DISCLOSURES REGARDING THE DEBTORS' SCHEDULES OF
ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**" or the "**Company**") hereby file their respective Schedules of Assets and Liabilities (the "**Schedules**") and the Statements of Financial Affairs (the "**Statements**," and together with the Schedules, the "**Schedules and Statements**") with the United States Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Court**"). The Schedules and Statements have been prepared in accordance with section 521 of title 11 of the United States Code (as amended, the "**Bankruptcy Code**") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**").

These *Global Notes and Statement of Limitations, Methodology, Disclaimer, and Specific Disclosures Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs* (the "**Global Notes**") pertain to, are incorporated by reference in, and comprise an integral part of each Debtor's Schedules and Statements. The Global Notes should be referred to, considered, and reviewed in connection with any review of the Schedules and Statements. Although management of the Debtors has made reasonable efforts to ensure that the Schedules and Statements are as accurate and complete as possible under the circumstances based on information that was available at the time of preparation, subsequent information or discovery may result in material changes to these Schedules and Statements, and inadvertent errors or omissions may exist. Because, among other things, the Schedules and Statements contain unaudited information, which is subject to further review and potential adjustment, there can be no assurance that these Schedules and Statements are complete. Furthermore, nothing contained in the Schedules and Statements shall constitute a waiver of any of the Debtors' rights or an admission with respect to their Chapter 11 Cases (defined herein), including, without limitation, any issues

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are Del Mar Holding LLC (9207), Del Mar Acquisition Inc. (8866), Surfliner Holdings, Inc. (9456), Harvest Sherwood Food Distributors, Inc. (8995), Harvest Meat Company, Inc. (9136), LAMCP Capital, LLC (N/A), Western Boxed Meats Distributors, Inc. (8735), Cascade Food Brokers, Inc. (1389), Hamilton Meat, LLC (6917), SFD Acquisition LLC (8995), SFD Transportation Corp. (1551), Sherwood Food Distributors, L.L.C. (4375), and SFD Company LLC (1175).  The Debtors' service address is c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd., Beaverton, OR 97005.

involving equitable subordination, offsets, defenses, or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant applicable laws to recover assets or avoid transfers.

1.  Description of the Chapter 11 Cases.  On May 5, 2025 (the "**Petition Date**"), each of the above-referenced Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court (the "**Chapter 11 Cases**").  The Debtors' Chapter 11 Cases are jointly-administered under Case No. 25-80109.  The Debtors are operating their business and managing their property as debtors-in-possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

2.  Reservation of Rights.  Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, inadvertent errors or omissions may exist. The Debtors reserve all rights to: (a) amend and/or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including, without limitation, the right to amend the Schedules and Statements with respect to claim description, designation, or Debtor against which the claim is asserted; (b) dispute or otherwise assert offsets or defenses to any claim reflected in the Schedules and Statements as to amount, liability, priority, status, or classification; (c) subsequently designate any claim as "disputed," "contingent," or "unliquidated;" or (d) object to the extent, validity, enforceability, priority, or avoidability of any claim (regardless of whether such claim is designated in the Schedules and Statements as "disputed," "contingent," or "unliquidated"). Any failure to designate a claim in the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such claim or amount is not "disputed," "contingent," or "unliquidated." Listing a claim does not constitute an admission of liability by the Debtor against which the claim is listed or against any of the Debtors. The omission of an asset from the Schedules and Statements does not constitute a representation regarding the ownership of such asset, and any such omission does not constitute a waiver of any rights of the Debtors with respect to such asset. Furthermore, nothing contained in the Schedules and Statements shall constitute a waiver of rights with respect to the Debtors' Chapter 11 Cases, including, without limitation, issues involving claims, substantive consolidation, defenses, equitable subordination, recharacterization, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers. Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph. Notwithstanding the foregoing, the Debtors shall not be required to update the Schedules and Statements.  A listing in the Schedules or Statements (including, without limitation, Schedule A/B, Schedule E/F or Statement 3) by the Debtors of any obligation between a Debtor and another Debtor is a statement of what appears in the Debtors' books and records and does not reflect any admission or conclusion of the Debtors regarding whether such amount would be allowed as a claim or how such obligations may be classified and/or characterized in a plan of reorganization or by the Bankruptcy Court.

3.  Summary of Reporting Policies.  Eric Kaup, as the Chief Restructuring Officer (the "Chief Restructuring Officer") of each of the Debtors, has signed the Schedules and Statements. In reviewing and signing the Schedules and Statements, Mr. Kaup necessarily relied upon the efforts, statements, and representations of other of the Debtors' former personnel and current professionals.  Mr. Kaup has not (and could not have) personally verified the accuracy of each

2

such statement and representation, including statements and representations concerning amounts owed to creditors and their addresses.  Accordingly, the Debtors reserve the right, as expressly provided for by Bankruptcy Rule 1009(a), to amend each of the Schedules and Statements from time to time as may be necessary or appropriate.  Except as expressly required by the Bankruptcy Code, the Debtors and their officers, agents, attorneys, and financial advisors expressly do not undertake any obligation to update, modify, revise, or re-categorize the information provided in the Schedules and Statements or to notify any third party should the information be updated, modified, revised, or re-categorized. The Debtors, on behalf of themselves, their officers, agents, and advisors disclaim any liability to any third party arising out of or related to the information contained in the Schedules and Statements and reserve all rights with respect thereto.  In addition, the following conventions were adopted by the Debtors in preparation of the Schedules and Statements:

a.    Basis of Presentation.  The Schedules and Statements reflect the separate assets and liabilities of each individual Debtor.  In preparing the Schedules and Statements, the Debtors relied upon information derived from their books and records that was available at the time of such preparation. Although the Debtors have made reasonable efforts to ensure the accuracy and completeness of such financial information, inadvertent errors or omissions, as well as the discovery of conflicting, revised, or subsequent information, may cause a material change to the Schedules and Statements.  For financial reporting purposes, the Debtors historically prepared consolidated financial statements, which were audited annually through the fiscal year ending December 31, 2023. The Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("**GAAP**"), nor are they intended to be fully reconciled with the financial statements of each Debtor (whether publicly filed or otherwise). Additionally, the Schedules and Statements contain unaudited information that is subject to further review and potential adjustment and reflect the Debtors' reasonable efforts to report the assets and liabilities of each Debtor on an unconsolidated basis.  The preparation of the Schedules and Statements required the Debtors to make reasonable estimates and assumptions with respect to the reported amounts of assets and liabilities, the amount of contingent assets and contingent liabilities on the date of the Schedules and Statements, and the reported amounts of revenues and expenses during the applicable reporting periods.  Actual results may differ from such estimates.

b.    Reporting Date.  Each Debtor's fiscal year ends on December 31. All asset information contained in the Schedules and Statements, except where otherwise noted, is as of March 31, 2025. The liability information, except where otherwise noted, is as of March 31, 2025 unless otherwise indicated.

c.    Employee Claims.  On February 18, 2025, the Company provided notice to its employee base in accordance with the Federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. 2101 et seq., and state equivalents (collectively, the "WARN Act") that it would shut down all operations by April 21, 2025, with employees remaining on payroll and benefits through April 21, 2025. As of the Petition Date, all employees have been terminated by the Company pursuant to the reduction in force ("**RIF**") (with a very

limited subset of such former employees assisting the Company in its Winddown Process as independent contractors).   Certain payroll checks were returned after the petition date as former employees did not deposit the checks, or the checks were voided. Additional payroll checks may be returned in the following weeks if a former employee fails to deposit the checks. The amounts should be minimal however the exact amount is not known. The Company has included amounts owed to former employees in relation to payroll checks that have been returned to the company. As such, these have been included on Schedule E/F. Otherwise, the Debtors believe that all other employee claims for prepetition amounts will have been satisfied.

   d.     Undetermined Amounts. The description of an amount as "unknown" or "undetermined" is not intended to reflect upon the materiality of such amount.

   e.     Book Value.  It would be prohibitively expensive, unduly burdensome and an inefficient use of estate assets for the Debtors to obtain current market valuations of all of their assets. Accordingly, unless otherwise indicated, the value of assets listed in the Schedules and Statements reflect the net book values as of April, 21, 2025. Accordingly, amounts ultimately realized may vary from net book value and such variance may be material.

   f.     Totals. All totals that are included in the Schedules and Statements represent totals of all the known amounts included on the Schedules and Statements.

   g.     Intercompany Claims and Transfers. Intercompany balances between Debtors have been excluded from the schedules and statements. The Debtors utilized accounts payable and accounts receivable to manage intercompany transfers. These are listed on the Schedules and labeled as Intercompany Payables and Intercompany Receivables. Any further determination of Intercompany balances would be unduly burdensome and an inefficient use of estate assets for the Debtors to determine on a Debtor by Debtor level.

   h.     Contingent Assets. The Debtors may not have set forth all of their causes of action against third parties as assets in their Schedules and Statements. The Debtors reserve all of their rights with respect to any claims, counter claims, causes of action or avoidance actions they may have and nothing contained in these Global Notes or the Schedules and Statements shall be deemed a waiver of any such claims, avoidance actions or causes of action or in any way prejudice or impair the assertion of such claims.

   i.     Claims. The Debtors' Schedules identify creditors and set forth the Debtors' estimates of the claims of creditors as of the Petition Date. Such Schedules may not have captured all claims. Claim amounts will be amended as appropriate for any such items subsequently identified.

   j.     Disputed, Contingent and/or Unliquidated Claims. Schedules D, E and F permit the Debtors to designate a claim as disputed, contingent and/or unliquidated. Listing a claim (i) on Schedule D as "secured," (ii) on Schedule E/F as "priority" or "unsecured

nonpriority," or listing a contract on Schedule G as "executory" or "unexpired," does not constitute an admission by the Debtor of the legal rights of the claimant, or a waiver of the Debtor's right to recharacterize or reclassify such claim or contract. In particular, the Debtors reserve the right to amend the Schedules and Statements to recharacterize or reclassify any such contract or claim. Any failure to designate a claim on the Debtors' Schedules and Statements as "disputed," "contingent" or "unliquidated" does not constitute an admission by the Debtors that such amount is not "disputed," "contingent" or "unliquidated." The Debtors reserve the right to dispute any claim reflected on their Schedules or Statements on any grounds, including, but not limited to, amount, liability or classification, or to otherwise subsequently designate such claims as "disputed," "contingent" or "unliquidated."

k.      Litigation. Certain litigation actions (the "Litigation Actions") reflected as claims against a particular Debtor may relate to one or more of the other Debtors. The Debtors made reasonable efforts to accurately record the Litigation Actions in the Schedules and Statements of the Debtor(s) that is the party to the Litigation Action. The inclusion of any Litigation Action in these Schedules and Statements does not constitute an admission by the Debtors of liability, the validity of any Litigation Action or the amount of any potential claim that may result from any claims with respect to any Litigation Action, or the amount, priority and/or treatment of any potential claim resulting from any Litigation Action currently pending or that may arise in the future.

l.      Global Notes Control. In the event that the Schedules and Statements differ from the foregoing Global Notes, the Global Notes shall control.

**Specific Disclosures with Respect to the Debtors' Schedule**

**Schedule A/B.** All values set forth in Schedule A/B reflect the Debtors' assets and liabilities as of the most recent full month closing at the time when the preparation of the statements and schedules began of the Company's financial statements on March 31, 2025 as applicable, unless otherwise noted below.

**Schedule A/B 3**. Cash values held in financial accounts are listed on Schedule A/B 3 as of the petition date, May 5, 2025. These balances were obtained from J.P. Morgan Chase and Wells Fargo bank statements.  In addition, approximately $170,000 of the Debtors' cash is held on account at one of the Debtors' insurance brokers, CAC Specialty.

**Schedule A/B 8**. Historically, the Company did not maintain records of certain prepaid assets at the individual vendor level. To present the prepaid insurance balances at a vendor level as of April 21, 2025, a pro-rata allocation of total amortization was performed to each vendor based on the remaining months of each prepaid asset.

**Schedule A/B 11**. As part of the winddown process, the Debtors engaged a third party to collect Accounts Receivable. As a result, the Company's latest accounts receivable aging report presents balance as of April 13, 2025. Receivable balances as of April 13, 2025 were then netted against third party collections from April 14 to April 25, 2025, and allowance for doubtful or uncollectible accounts as of March 31, 2025. The third-party collections

agent no longer tracks accounts receivable aging at the legal entity level, rather only at a consolidated level.

**Schedule A/B 50.** The fixed assets presented reflect the Debtors' remaining assets which are planned to be sold at auction in the coming months. The auctioneer is known but the final buyer of the fixed assets is unknown. The net book value of these assets is unknown. As of the last day of the Company's operations, April 21, 2025, all fixed assets were either sold, abandoned, or put up for auction. It would be prohibitively expensive, unduly burdensome and an inefficient use of estate assets for the Company to specifically identify the treatment of assets that were not put up for auction (e.g., abandoned, etc.).

**Schedule A/B 60.** The Debtors have listed all known trademarks as intellectual property. The actual value of the trademarks is unknown as of the petition date, and has been listed as Undetermined on Schedule A/B.

**Schedule A/B 72.** The vast majority of amounts reflected relate to Net Operating Loss (NOL) Carryovers from the 2023 tax year. The largest NOL represents a Non-SRLY NOL from the Federal Income Tax filed by Debtor Del Mar Acquisition Inc. in the amount of $92,191,000.00. Tax refunds amount to $199,335.13.

**Schedule A/B 74**. The Debtors are plaintiffs in several ongoing anti-trust and price-fixing litigation claims against multiple defendants that are pork, chicken, and beef producers. Additionally, there is litigation against a former non-director/officer employee related to fraudulent transfer claims, as well as breach of contract/fraudulent transfer claims against Sprouts Farmers Market Inc. The value of such litigation claims and/or potential settlements in connection therewith is not specifically determinable and as such the Company has not accrued for such claims/settlements.

**Schedule A/B 77.** Intercompany activity represents corporate expenses which are allocated to the Company's operating branches which sit in different legal entities as well as payables/receivables which may be received at one legal entity then subsequently transferred to another legal entity to reflect the operating activity more accurately. The schedule also presents receivables from services the Debtors provided in connection with three Transition Service Agreements related to the sales of the branch locations in Kansas City, Miami, Los Angeles, Salt Lake City, and Denver. These amounts, however, are undetermined due to current negotiations with the buyers.

**Schedule D**. The balance shown on Schedule D reflects the balance of the Debtors' prepetition asset-backed lending facility as of May 5, 2025, per a J.P. Morgan Chase Loan Statement. Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of liens. Nothing in the Global Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of such agreements. All legal Debtors aside from Del Mar Holding LLC and Del Mar Acquisition Inc. are obligors on such debt facility.

**Schedule E/F part 1.**. Taxes accrued as of filing may be paid pursuant to the *Interim Order (I) Authorizing Debtors to Pay Certain Prepetition Taxes and Fees; and (II) Granting*

*Related Relief* [Docket No. 74] and/or any final order regarding the same relief entered after the date hereof. Amounts listed on Schedule E include: certain payroll checks which were sent out prepetition that have been returned or are still outstanding (which are processed by a third-party payroll management company), an outstanding balance due to the Oregon State Department of Revenue for payroll taxes, and 2024 state and local tax payments upon which the company has estimated the amount to be paid at the time of filing the tax extension. The 2024 state and local taxes have been estimated and may change once the actual tax returns are filed in Q3 2025.

**Schedule E/F part 2**. The Debtors have used reasonable efforts to report all general unsecured claims against the Debtors on Schedule E/F part 2, based upon the Debtors' Accounts Payable Aging report as of April 21, 2025. Additionally, the Debtors have included general unsecured claims for goods and inventory that has been received but not yet invoiced to the Debtors.

Determining the date upon which each claim on Schedule E/F part 2 was incurred or arose would be unduly burdensome and cost prohibitive and, therefore, the Debtors do not list a date for each claim listed on Schedule E/F part 2. Furthermore, claims listed on Schedule E/F part 2 may have been aggregated by unique creditor name in certain instances and remit to address and may include several dates of incurrence for the aggregate balance listed.

Schedule E/F part 2 contains information regarding pending litigation involving the Debtors. The dollar amount of potential claims associated with any such pending litigation is listed as "unknown" and marked as contingent, unliquidated, and disputed in the Schedules and Statements.

Schedule E/F part 2 reflects the prepetition amounts owing to counterparties to executory contracts and unexpired leases. Additionally, Schedule E/F part 2 does not include all potential rejection damage claims, if any, of the counterparties to executory contracts and unexpired leases that may be rejected.

**Schedule G**. Certain of the contracts and agreements listed on Schedule G may consist of several parts, including but not limited to amendments, restatements, waivers, letters, and other documents that may not be expressly detailed on Schedule G or that may be listed as a single entry. In preparing Schedule G, the Debtors have generally consolidated all contracts with a counterparty into a single line item with the intent to inform counterparties. Additionally, listing out all amendments and parts of each contract and agreement the Debtors entered would be prohibitively expensive, unduly burdensome and an inefficient use of estate assets. The Debtors expressly reserve their rights to challenge whether such related materials constitute an executory contract, a single contract or agreement or multiple, severable, or separate contracts.

Certain information, such as the contact information of the counterparty, may not be included where such information could not be obtained using the Debtors' best reasonable efforts. Listing or omitting a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is or is not an executory contract or unexpired

7

lease was in effect on the Petition Date or is valid or enforceable. Certain of the leases and contracts listed on Schedule G may contain certain renewal options, guarantees of payment, indemnifications, options to purchase, rights of first refusal, and other miscellaneous rights. Such rights, powers, duties, and obligations are not set forth separately on Schedule G.

Certain confidentiality and non-disclosure agreements may not be listed on Schedule G due to confidentiality restrictions and/or their commercially sensitive nature.  The Debtors reserve all of their rights with respect to such agreements.

The contracts, agreements, and leases listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, memoranda, and other documents, instruments, and agreements that may not be listed therein despite the Debtors' use of reasonable efforts to identify such documents. Further, unless otherwise specified on Schedule G, each executory contract or unexpired lease listed thereon shall include all exhibits, schedules, riders, modifications, declarations, amendments, supplements, attachments, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without respect to whether such agreement, instrument, or other document is listed thereon. The contracts, agreements, and leases listed on Schedule G may also not have a readily available end date.

In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their businesses, such as subordination, non-disturbance, and attornment agreements, supplemental agreements, settlement agreements, amendments/letter agreements, title agreements and confidentiality agreements. Such agreements may not be set forth on Schedule G. Certain of the executory agreements may not have been memorialized and could be subject to dispute. Executory agreements that are oral in nature have not been included on the Schedule G.

As detailed in *Debtors' Motion for Entry of an Order (I) Authorizing Debtors to (A) Reject Certain Unexpired Leases of Nonresidential Real Property Effective as of the Lease Rejection Date and (B) Abandon De Minimis Property in Connection Therewith and (II) Granting Related Relief* [Docket No. 135] the Debtors exited all real property leases prepetition other than their lease in Dallas, Texas.  Notwithstanding the foregoing, the Debtors filed the Lease Rejection Motion to the extent any landlord counterparties in connection therewith assert rent remains due on a post petition basis even after accounting for such exits.  Accordingly, Schedule G may include leases that were exited prepetition or were rejected as of the Petition Date.

**Schedule H**. For purposes of Schedule H, the Debtors that are either the principal obligors or guarantors under the Debtors' prepetition debt facilities are listed as Co-Debtors on Schedule H. The Debtors may not have identified certain guarantees associated with the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements.

8

In the ordinary course of their businesses, the Debtors may be involved in pending or threatened litigation. These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counter-claims against other parties. Litigation matters can be found on each Debtor's Schedule E/F part 2 and Statement 7, as applicable.

**Specific Disclosures with Respect to the Debtors' Statements**

**Gross Revenues (Statements Part 1, Question 1)**. Gross revenues include estimates based on historical data available to the Debtors at the time of filing. 2025 figures represent revenue recognized by the Company from January 2025 to April 21, 2025.

**Payments to Creditors within 90 Days (Statement Part 2, Question 3)**. Statement Part 2, question 3 includes any disbursement or other transfer made by the Debtors within 90 days before the Petition Date except for those made to insiders (which payments appear in response to Statement question 4) and employees.

**Payments or other transfers of property made within 1 year before filing this case that benefited any insider (Statement Part 2, Question 4)**.  The Debtors have included all payroll distributions and, benefits, bonuses and expense reimbursements, made over the twelve months preceding the Petition Date to any individual that may be deemed an "Insider."  Certain insiders, such as board members, are employed by non-Debtor entities, but paid by Debtor entities and have been included on this schedule.

**Repossessions (Statement Part 2, Question 5)**. Over the twelve months preceding the Petition Date, the Debtors had assets repossessed by various creditors due to the winddown of operations and lack of payment. Due to the large quantity of items repossessed, all details of individual assets are not available. Debtor, SFD Transportation Corp., was generally used to record all asset leases, had assets repossessed with an estimated of net book value of $8,332,240.35.

**Legal Actions or Assignments (Statement Part 3, Question 7)**. Information provided in Statement Part 3, question 7, may not include every administrative agency proceeding open or closed during the relevant time period, as certain agency proceedings are quickly dismissed or settled for a nominal sum. Additionally, any information contained in Statement Part 3, question 7 shall not be a binding representation of the Debtors' liabilities with respect to any of the suits and proceedings identified therein.

**Gifts and Contributions (Statement Part 4, Question 9):** Due to the nature of the Debtors' business, the Debtors regularly donated perishable goods and inventory to local food banks. The Debtors did not record individual donations at the transaction level. As such, the current Schedules reflect the aggregate donations by debtor entity.

**Losses (Statement Part 5, Question 10):** A prepetition roof collapse damaged a Debtor facility in Detroit resulting in property losses estimated at $341,114.00 consisting of damages to such roof and inventory and other assets contained therein.

**Payments related to bankruptcy (Statement Part 6, Question 11).** All disbursements listed in Question 11 were for the benefit of all Debtors. All payments for services of any entities that provided consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy within one year immediately preceding the Petition Date are listed on that Debtor's response to SOFA Part 6, Question 11. Additional information regarding the Debtors' retention of professional service firms is more fully described in individual retention applications and related orders. In addition, the Debtors have listed payments made to professionals retained by the Debtors but not payments made to advisors of post-petition lenders or other parties on account of any applicable fee arrangements.

**Transfer of Assets (Statement Part 6, Question 13):** Due to the Debtors' winddown of operations within the preceding twelve months of the Petition Date, significant transfers of assets occurred regularly and at times in bulk quantities. This includes and is not limited to transfers of assets included in Asset purchase agreements ("**APAs**") and auctions conducted at auction houses. For transfers of assets related to an APA, the assets were included in the purchase price and the related transaction is listed. For transfers of assets related to auctions, the auction house is listed as the individual buyers of the assets was not known and no funds were received directly from the individual buyers but rather the auction houses.

**Previous Locations (Statement Part 7, Question 14).** The dates of occupancy of the locations listed may have varied from the dates presented due to the Debtors exiting the locations during the winddown of the business in the 3 months preceding the Petition Date.

**Personal Identifiable Information (Statement Part 9, Question 16).** The Debtors did not regularly collect Personal Identifiable Information but may have collected Personal Identification Information from customers during the course of normal business. This information may have included credit and banking information, social security numbers, and employee identification numbers.

**Off-premises Storage (Statement Part 10, Question 20).** Due to the winddown of the Debtors' operations, as the Debtors exited locations, off-premises storage was utilized to store sensitive Company information. The Debtors used Iron Mountain and Access for physical document storage. Third party document retention storage providers do not share the physical locations of documents. Documents are available upon request and/or digitally. As a result, the addresses listed are corporate offices of the third party document storage providers and may not have any of the Debtors physical files on site.

**Other Businesses (Statement Part 13, Question 25).** GALLY INVESTMENTS S DE R.L. DE C.V ("**Gally**") is presented as a trading company which has been noted to be used prior to 2017 but the Debtors could not specifically identify the start date for this trading company. Under information and belief, the Debtors understand that Gally is a dormant entity with assets or operations.

**Financial Institutions (Statement Part 13, Question 26d).** The Debtors have provided financial statements in the ordinary course of their businesses to numerous financial

10

institutions, creditors, and other parties within two years immediately before the Petition Date. Considering the number of such recipients and the possibility that such information may have been shared with parties without the Debtors' knowledge or consent or subject to confidentiality agreements, the Debtors may not have disclosed all parties that may have received such financial statements for the purposes of Statement Part 13, question 26(d).

**Inventories (Statement Part 13, Question 27)**. In the two years preceding the Petition Date, the Debtors did not perform a complete physical inventory audit at a Company-wide level or at a Debtor-level. However, the Debtors routinely performed inventory counts by branch location with onsite employees. Considering the significant liquidation of all inventory during the winddown the Debtors currently do not know of any remaining material inventory as of April 21, 2025.

**Payments to Insiders (Statement Part 13, Question 30)**. Any and all known disbursements to insiders of the Debtors have been listed in response to Statements, Part 2, Question 4.

**Consolidated Tax Group (Statement Part 13, Question 31)**. The Debtors file a Form 1065 for Del Mar Holdings LLC and consolidated taxes at the Del Mar Acquisition Inc. entity level. Taxes filed for Del Mar Acquisition Inc. are consolidated to include Del Mar Acquisition Inc. and all Debtor subsidiaries under Del Mar Acquisition Inc. Certain tax obligations, refunds and net operating losses may therefore not be listed for an individual Debtor. Nothing in the Statements or Schedules is an admission that a particular Debtor is liable with respect to any particular tax liability. The failure to include a tax refund, or net operating loss, or to list the value of such net operating loss on an individual Debtor level is not an admission that such Debtor does not have a net operating loss, and the Debtors reserve all rights to assert net operating losses.

* * * * *END OF GLOBAL NOTES* * * * *

*SCHEDULES AND STATEMENTS BEGIN ON THE FOLLOWING PAGE*

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
</table>

| Debtor | Western Boxed Meats Distributors, Inc. |
|---|---|

| United States Bankruptcy Court for the: | Northern District of Texas |
|---|---|

| Case number (if known) | 25-80120 |
|---|---|

☐ Check if this is an amended filing

## Official Form 207

# Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

04/25

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

---

**Part 1:    Income**

**1.  Gross revenue from business**

☐ None

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | | | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
|---|---|---|---|---|
| FROM THE BEGINNING OF THE FISCAL YEAR TO FILING DATE: | From 1/1/2025 | To 4/21/2025 | ☑ Operating a business<br>☐ Other | $44,615,758.68 |
| FOR PRIOR YEAR: | From 1/1/2024 | To 12/31/2024 | ☑ Operating a business<br>☐ Other | $330,953,128.30 |
| FOR THE YEAR BEFORE THAT: | From 1/1/2023 | To 12/31/2023 | ☑ Operating a business<br>☐ Other | $316,467,432.28 |

**2.  Non-business revenue**

Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☐ None

| | | | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
|---|---|---|---|---|
| FROM THE BEGINNING OF THE FISCAL YEAR TO FILING DATE: | From 1/1/2025 | To 5/5/2025 | TRUCKING LOADING/UNLOADING FEE | $3,071.00 |
| FROM THE BEGINNING OF THE FISCAL YEAR TO FILING DATE: | From 1/1/2025 | To 5/5/2025 | INTEREST INCOME | $188.90 |
| FOR PRIOR YEAR: | From 1/1/2024 | To 12/31/2024 | TRUCKING LOADING/UNLOADING FEE | $70,538.28 |
| FOR PRIOR YEAR: | From 1/1/2024 | To 12/31/2024 | INTEREST INCOME | $1,099.48 |
| FOR THE YEAR BEFORE THAT: | From 1/1/2023 | To 12/31/2023 | TRUCKING LOADING/UNLOADING FEE | $158,431.60 |
| FOR THE YEAR BEFORE THAT: | From 1/1/2023 | To 12/31/2023 | BUILDING INCOME | $15,000.00 |
| FOR THE YEAR BEFORE THAT: | From 1/1/2023 | To 12/31/2023 | INTEREST INCOME | $1,591.09 |
| FOR THE YEAR BEFORE THAT: | From 1/1/2023 | To 12/31/2023 | INTEREST INCOME | $132.90 |

---

**Part 2:    List Certain Transfers Made Before Filing for Bankruptcy**

**3.  Certain payments or transfers to creditors within 90 days before filing this case**

List payments or transfers—including expense reimbursements—to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $8,575. (This amount may be adjusted on 4/1/28 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☐ None

---

Debtor    Western Boxed Meats Distributors, Inc.                                  Case number (if known)   25-80120
          (Name)

| Creditor's name and address | Dates | Total amount or value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|
| AB FOODS<br>PO BOX 742292<br>LOS ANGELES, CA  90074 | 02/04/2025 | $1,002,131.08 | FOOD VENDOR |
| **TOTAL FOR AB FOODS** | | **$1,002,131.08** | |
| BRE JUPITER C WEST<br>PO BOX 201417<br>DALLAS, TX  75320-1417 | 03/07/2025 | $179,038.10 | SUPPLIERS OR VENDORS |
| **TOTAL FOR BRE JUPITER C WEST** | | **$179,038.10** | |
| CITY OF PORTLAND<br>664 N TILLAMOOK ST<br>PORTLAND, OR  97227 | 03/07/2025 | $13,297.62 | UTILITIES |
| **TOTAL FOR CITY OF PORTLAND** | | **$13,297.62** | |
| DIESEL DIRECT WEST<br>4509 HARLIN DR<br>SACRAMENTO, CA  95826 | 02/26/2025 | $73,512.72 | UTILITIES |
| | 03/06/2025 | $24,471.61 | UTILITIES |
| | 03/12/2025 | $10,617.11 | UTILITIES |
| | 03/21/2025 | $13,422.15 | UTILITIES |
| **TOTAL FOR DIESEL DIRECT WEST** | | **$122,023.59** | |
| GLACIER SALES INC<br>PO BOX 2646<br>YAKIMA, WA  98907 | 03/27/2025 | $9,599.04 | SUPPLIERS OR VENDORS |
| **TOTAL FOR GLACIER SALES INC** | | **$9,599.04** | |
| HOUSE OF RAEFORD<br>P.O BOX 890663<br>CHARLOTTE, NC  28289-0663 | 02/04/2025 | $45,326.40 | FOOD VENDOR |
| **TOTAL FOR HOUSE OF RAEFORD** | | **$45,326.40** | |
| JACKSON  NORVO ENTERPRISES LLC<br>PO BOX 1260<br>BORING, OR  97009 | 03/07/2025 | $51,723.75 | SUPPLIERS OR VENDORS |
| **TOTAL FOR JACKSON  NORVO ENTERPRISES LLC** | | **$51,723.75** | |
| JBS FOOD CANADAINC<br>PO BOX 15495,STATION A<br>TORONTO, ON  M5W1C1 | 02/04/2025 | $168,106.05 | FOOD VENDOR |
| **TOTAL FOR JBS FOOD CANADAINC** | | **$168,106.05** | |
| JBS USA LLC<br>PO BOX 88920<br>CHICAGO, IL  60695-1920 | 02/05/2025 | $532,601.51 | FOOD VENDOR |
| **TOTAL FOR JBS USA LLC** | | **$532,601.51** | |
| JR SIMPLOT CO<br>PO BOX 371-169<br>PITTSBURGH, PA  15251-7169 | 02/28/2025 | $28,564.48 | SUPPLIERS OR VENDORS |
| **TOTAL FOR JR SIMPLOT CO** | | **$28,564.48** | |

Debtor   Western Boxed Meats Distributors, Inc.                      Case number (if known)  25-80120

(Name)

| Creditor's name and address | Dates | Total amount or value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|
| LINEAGE COLUMBIA LLC<br>27626 NETWORK PLACE<br>CHICAGO, IL 60673-1276 | 02/24/2025 | $41,259.35 | SUPPLIERS OR VENDORS |
| | 02/26/2025 | $28,873.86 | SUPPLIERS OR VENDORS |
| | 02/26/2025 | $13,171.81 | SUPPLIERS OR VENDORS |
| **TOTAL FOR LINEAGE COLUMBIA LLC** | | **$83,305.02** | |
| NORTHWEST NATURAL GAS<br>PO BOX 6017<br>PORTLAND, OR 97228-6017 | 02/26/2025 | $5,109.22 | UTILITIES |
| | 02/26/2025 | $2,182.79 | UTILITIES |
| | 02/26/2025 | $1,090.82 | UTILITIES |
| | 02/26/2025 | $447.15 | UTILITIES |
| **TOTAL FOR NORTHWEST NATURAL GAS** | | **$8,829.98** | |
| PACIFIC POWER  LIGHT<br>PO BOX 26000<br>PORTLAND, OR 97256-0001 | 02/26/2025 | $20,617.67 | UTILITIES |
| | 02/26/2025 | $7,285.19 | UTILITIES |
| | 02/26/2025 | $6,470.14 | UTILITIES |
| | 02/26/2025 | $607.96 | UTILITIES |
| | 02/26/2025 | $202.07 | UTILITIES |
| **TOTAL FOR PACIFIC POWER  LIGHT** | | **$35,183.03** | |
| SCOTLYNN USA DIVISION INC<br>9597 GULF RESEARCH LN<br>FORT MYERS, FL 33912 | 02/14/2025 | $52,131.50 | FREIGHT VENDOR |
| **TOTAL FOR SCOTLYNN USA DIVISION INC** | | **$52,131.50** | |
| TEMP RITE REFRIGERATION LLC<br>PO BOX 821336<br>VANCOUVER, WA 98682 | 02/26/2025 | $10,223.00 | SUPPLIERS OR VENDORS |
| **TOTAL FOR TEMP RITE REFRIGERATION LLC** | | **$10,223.00** | |
| TRUE WEST BEEF LLC<br>PO BOX 505652<br>ST LOUIS, MO 63150 | 02/04/2025 | $503,811.41 | BROKER |
| **TOTAL FOR TRUE WEST BEEF LLC** | | **$503,811.41** | |
| **GRAND TOTAL:** | | **$2,845,895.56** | |

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**
   List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $8,575. (This amount may be adjusted on 4/1/28 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates ; and any managing agent of the debtor. 11 U.S.C. § 101(31).

   ☑ None

5. **Repossessions, foreclosures, and returns**
   List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

   ☑ None

6. **Setoffs**
   List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

   ☑ None

Debtor   Western Boxed Meats Distributors, Inc.                    Case number (if known)   25-80120
     (Name)

---

| Part 3: | Legal Actions or Assignments |
|---|---|

**7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity-within 1 year before filing this case.

☐ None

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| AB FOODS, LLC V. HARVEST SHERWOOD FOOD DISTRIBUTORS, INC. ET AL.<br><br>**Case number**<br>1:25-CV-00175-DCN | BREACH OF CONTRACT | U.S. DISTRICT COURT FOR THE DISTRICT OF IDAHO<br>550 W. FORT STREET<br>BOISE, ID  83724 | ☑ Pending<br>☐ On appeal<br>☐ Concluded |
| DRIFTLESS MEATS, LLC, PREMIUM IOWA PORK, L.L.C., & PREMIUM MINNESOTA PORK, LLC V. WESTERN BOXED MEATS DISTRIBUTORS, INC.<br><br>**Case number**<br>LA-CV-057038 | CIVIL ACTION | IOWA DISTRICT COURT FOR FAYETTE COUNTY<br>114 NORTH VINE STREET<br>WEST UNION, IA  52175 | ☑ Pending<br>☐ On appeal<br>☐ Concluded |
| NEXT PHASE ENTERPRISES, LLC V. HARVEST/SHERWOOD ET AL.<br><br>**Case number**<br>CV-25-010318 | CIVIL ACTION | SUPERIOR COURT OF ARIZONA, MARICOPA COUNTY<br>201 W. JEFFERSON STREET<br>PHOENIX, AZ  85003 | ☑ Pending<br>☐ On appeal<br>☐ Concluded |
| PAINTED HILLS NATURAL BEEF V. WESTERN BOXED MEATS DISTRIBUTORS, INC.<br><br>**Case number**<br>25-CV-10679 | CIVIL ACTION | CIRCUIT COURT OF THE STATE OF OREGON, WHEELER COUNTY<br>701 ADAMS ST<br>FOSSIL, OR  97830 | ☑ Pending<br>☐ On appeal<br>☐ Concluded |
| TRUE WEST BEEF LLC V. SHERWOOD/HS/HARVEST MEAT/WESTERN BOXED/DOES 1-100<br><br>**Case number**<br>123-CV-00174-AKB | BREACH OF CONTRACT | U.S. DISTRICT COURT FOR THE DISTRICT OF IDAHO<br>550 W. FORT STREET<br>BOISE, ID  83724 | ☑ Pending<br>☐ On appeal<br>☐ Concluded |

**8. Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

---

| Part 4: | Certain Gifts and Charitable Contributions |
|---|---|

**9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☑ None

---

| Part 5: | Certain Losses |
|---|---|

**10. All losses from fire, theft, or other casualty within 1 year before filing this case.**

☑ None

---

| Part 6: | Certain Payments or Transfers |
|---|---|

---

Debtor   Western Boxed Meats Distributors, Inc.
(Name)

Case number (if known)   25-80120

**11. Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☑ None

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

☑ None

**13. Transfers not already listed on this statement**

List any transfers of money or other property—by sale, trade, or any other means—made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs.
Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☑ None

| Part 7: | Previous Locations |
|---|---|

**14. Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☐ Does not apply

| Address | Dates of occupancy | |
|---|---|---|
| 2346 NE ARGYLE STREET PORTLAND, OR 97211 | From 9/1/2019 | To 4/21/2025 |
| 2401 NE ARGYLE STREET PORTLAND, OR 97211 | From 8/1/2008 | To 4/21/2025 |
| 2331 NE ARGYLE STREET PORTLAND, OR 97211 | From 4/1/2008 | To 4/21/2025 |

| Part 8: | Health Care Bankruptcies |
|---|---|

**15. Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for :
—   diagnosing or treating injury, deformity, or disease, or
—   providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.

| Part 9: | Personal Identifiable Information |
|---|---|

**16. Does the debtor collect and retain personally identifiable information of customers?**

☐ No.
☑ Yes.  State the nature of the information collected and retained.        CREDIT AND BANKING INFORMATION, SOCIAL SECURITY NUMBERS, EMPLOYEE IDENITIFCATION NUMBERS

   Does the debtor have a privacy policy about that information?

   ☐ No
   ☑ Yes

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No.  Go to Part 10.
☐ Yes.  Does the debtor serve as plan administrator?

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

Debtor   Western Boxed Meats Distributors, Inc.                    Case number *(if known)*  25-80120

   (Name)

**18. Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name , or for the debtor's benefit, closed, sold, moved, or transferred?

Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☐ None

| Financial institution name and address | Last 4 digits of account number | Type of account | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| WELLS FARGO<br>401 B STREET<br>22ND FLOOR, SUITE 2201<br>SAN DIEGO, CA 92101 | 0881 | ☐ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☑ Other<br>COLLECTION ACCOUNT | 4/2/2025 | $0.00 |

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

| Part 11: | Property the Debtor Holds or Controls That the Debtor Does Not Own |
|---|---|

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☑ None

| Part 12: | Details About Environmental Information |
|---|---|

For the purpose of Part 12, the following definitions apply:

- *Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).
- *Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
- *Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22. Has the debtor been a party in any judicial or administrative proceeding under any environmental law?** Include settlements and orders.

☑ No

☐ Yes.  Provide details below.

**23. Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☑ No

☐ Yes.  Provide details below.

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No

☐ Yes.  Provide details below.

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

Debtor    Western Boxed Meats Distributors, Inc.                    Case number (if known)   25-80120
         (Name)

---

**25. Other businesses in which the debtor has or has had an interest**
    List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case.
    Include this information even if already listed in the Schedules.

    ☐ None

| Business name and address | Describe the nature of the business | Employer Identification number
Do not include Social Security number or ITIN. |
|---|---|---|
| CASCADE FOOD BROKERS, INC.
C/O EPIQ CORPORATE
RESTRUCTURING, LLC
10300 SW ALLEN BLVD
BEAVERTON, OR  97005 | SPECIALITY FOOD BROKER | 93-0981389
**Date business existed**
From: 7/19/1988        To: PRESENT |

---

**26. Books, records, and financial statements**

26a.    List all accountants and bookkeepers who maintained the debtor's books and records within  2 years before filing this case.

    ☐ None

| Name and address | Dates of service | |
|---|---|---|
| NAME ON FILE
ADDRESS ON FILE | From 9/18/2017 | To CURRENT |
| NAME ON FILE
ADDRESS ON FILE | From 1/8/2018 | To CURRENT |
| NAME ON FILE
ADDRESS ON FILE | From 3/5/2015 | To CURRENT |
| NAME ON FILE
ADDRESS ON FILE | From 10/19/1987 | To CURRENT |

26b.    List all firms or individuals who have audited, compiled,  or reviewed debtor's books of account and records or prepared a financial
        statement within 2 years before filing this case.

    ☐ None

| Name and address | Dates of service | |
|---|---|---|
| CROWE LLP
225 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL  60606-1224 | From  2017 | To  2023 |
| PLANTE MORAN PLLC
3000 TOWN CENTER
SUITE 100
SOUTHFIELD, MI  48075 | From  FEB 2023 | To  CURRENT |
| RSM US LLP
30 S WACKER DR
SUITE 3300
CHICAGO, IL  60606 | From  2017 | To  CURRENT |

26c.    List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed .

    ☐ None

| Name and address | If any books of account and records are
unavailable, explain why |
|---|---|
| CROWE LLP
225 WEST WACKER DRIVE
SUITE 2600
CHICAGO, IL  60606-1224 | |
| NAME ON FILE
ADDRESS ON FILE | |
| NAME ON FILE
ADDRESS ON FILE | |
| NAME ON FILE
ADDRESS ON FILE | |
| NAME ON FILE
ADDRESS ON FILE | |
| PLANTE MORAN PLLC
3000 TOWN CENTER
SUITE 100
SOUTHFIELD, MI  48075 | |

---

Official Form 207                **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**                Page 7 of 10

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| RSM US LLP<br>30 S WACKER DR<br>SUITE 3300<br>CHICAGO, IL  60606 | |

26d.    List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

| Name and address |
|---|
| 1970 GROUP INC<br>33 BENEDICT PLACE<br>2ND FLOOR<br>GREENWICH, CT  06830 |
| BANK OF AMERICA<br>ONE BRYANT PARK<br>NEW YORK, NY  10036 |
| FIFTH THIRD BANK<br>38 FOUNTAIN SQUARE PLAZA<br>CINCINNATI, OH  45263 |
| JPMORGAN CHASE BANK NA<br>10 S DEARBORN ST<br>CHICAGO, IL  60603 |
| RSM US LLP<br>30 S WACKER DR<br>SUITE 3300<br>CHICAGO, IL  60606 |
| THE AMYNTA GROUP<br>909 THIRD AVENUE<br>33RD FLOOR<br>NEW YORK, NY  10022 |

27.    **Inventories**
Have any inventories of the debtor's property been taken within 2 years before filing this case?

☐ None

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|

SEE GLOBAL NOTES

**Name and address of the person who has possession of inventory records**

28.    **List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

☐ None

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| HARVEST SHERWOOD FOOD DISTRIBUTORS, INC. | C/O EPIQ CORPORATE RESTRUCTURING, LLC<br>10300 SW ALLEN BLVD<br>BEAVERTON, OR  97005 | EQUITYHOLDER | 100.00% |
| KAUP, ERIC | ADDRESS ON FILE | CHIEF RESTRUCTURING OFFICER | 0.00% |
| FRIZZLEY, JILL | ADDRESS ON FILE | INDEPENDENT DIRECTOR | 0.00% |

29.    **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ None

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|

Debtor   Western Boxed Meats Distributors, Inc.          Case number (if known)  25-80120
(Name)

| Name | Address | Position and nature of any interest | Period during which position or interest was held | |
|------|---------|-------------------------------------|--------------------------------------------------|---|
| BERGER, KARL | ADDRESS ON FILE | FORMER CHIEF EXECUTIVE OFFICER | From 7/15/2019 | To 4/21/2025 |
| FOURNIER, SCOTT | ADDRESS ON FILE | FORMER CHIEF FINANCIAL OFFICER | From 9/18/2017 | To 4/21/2025 |
| BABIKIAN, SHANT | ADDRESS ON FILE | FORMER BOARD MEMBER | From 4/3/2017 | To 3/18/2025 |
| FRENCH, SCOT | ADDRESS ON FILE | FORMER BOARD MEMBER | From 4/3/2017 | To 3/18/2025 |
| KASSAR, NAEL | ADDRESS ON FILE | FORMER BOARD MEMBER | From 4/3/2017 | To 3/18/2025 |
| KVASNICKA, JAY | ADDRESS ON FILE | FORMER BOARD MEMBER | From 9/25/2023 | To 3/18/2025 |
| MOREY, SANJAY | ADDRESS ON FILE | FORMER BOARD MEMBER | From 4/24/2017 | To 12/31/2024 |
| POHL, TIMOTHY | ADDRESS ON FILE | FORMER INDEPENDENT DIRECTOR | From 3/18/2025 | To 4/25/2025 |

30. **Payments, distributions, or withdrawals credited or given to insiders**
Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ None

   SEE PART 2, QUESTION 4

31. **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ None

| Name of the parent corporation | Employer identification number of the parent corporation. |
|--------------------------------|-----------------------------------------------------------|
| DEL MAR ACQUISITION INC. | 47-4628866 |

32. **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ None

Official Form 207          **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**          Page 9 of 10

Debtor    Western Boxed Meats Distributors, Inc.    Case number (if known) 25-80120
    (Name)

| Part 14: | Signature and Declaration |
|---|---|

WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 06/09/2025.

**✗** /s/ Eric Kaup            Eric Kaup
Signature of individual signing on behalf of the debtor      Printed Name

Chief Restructuring Officer
Position or relationship to debtor

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**
☒ No
☐ Yes

Official Form 207      **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**      Page 10 of 10