**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HARVEST SHERWOOD FOOD DISTRIBUTORS, INC., *et al.*,[1] | Case No. 25-80109 (SGJ) |
| Debtors. | (Jointly Administered) |

**SECOND AMENDED JOINT CHAPTER 11 PLAN OF HARVEST**
**SHERWOOD FOOD DISTRIBUTORS, INC. AND ITS DEBTOR AFFILIATES**

SIDLEY AUSTIN LLP
Chelsea McManus (24131499)
2323 Cedar Springs, Suite 2600
Dallas, Texas 75201
Telephone:   (214) 981-3300
Facsimile:   (214) 981-3400
Email:   cmcmanus@sidley.com

SIDLEY AUSTIN LLP
Stephen Hessler (admitted *pro hac vice*)
Anthony R. Grossi (admitted *pro hac vice*)
Jon Muenz (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:   (212) 839-5300
Facsimile:   (212) 839-5599
Email:   shessler@sidley.com
   agrossi@sidley.com
   jmuenz@sidley.com

SIDLEY AUSTIN LLP
Jason L. Hufendick (admitted *pro hac vice*)
Ryan Fink (admitted *pro hac vice*)
Daniela Rakowski (admitted *pro hac vice*)
One South Dearborn
Chicago, Illinois 60603
Telephone:   (312) 853-7000
Facsimile:   (312) 853-7036
Email:   jhufendick@sidley.com
   ryan.fink@sidley.com
   drakowski@sidley.com

*Attorneys for the Debtors*
*and Debtors in Possession*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are Del Mar Holding LLC (9207), Del Mar Acquisition Inc. (8866), Surfliner Holdings, Inc. (9456), Harvest Sherwood Food Distributors, Inc. (8995), Harvest Meat Company, Inc. (9136), LAMCP Capital, LLC (N/A), Western Boxed Meats Distributors, Inc. (8735), Cascade Food Brokers, Inc. (1389), Hamilton Meat, LLC (6917), SFD Acquisition LLC (8995), SFD Transportation Corp. (1551), Sherwood Food Distributors, L.L.C. (4375), and SFD Company LLC (1175). The Debtors' service address is c/o Epiq Corporate Restructuring, LLC 10300 SW Allen Blvd., Beaverton, OR 97005.

# TABLE OF CONTENTS

ARTICLE I.  DEFINED TERMS AND RULES OF INTERPRETATION ................................. 1
   A.  Defined Terms. ............................................................................................... 1

   B.  Rules of Interpretation. .................................................................................. 23

   C.  Computation of Time. .................................................................................... 24

   D.  Reference to Monetary Figures. ..................................................................... 24

   E.  Reference to the Debtors or the Post-Effective Date Debtors. ....................... 24

   F.  Controlling Document. .................................................................................. 24

ARTICLE II.  ADMINISTRATIVE CLAIMS,  PRIORITY TAX CLAIMS, AND
STATUTORY FEES ................................................................................................. 24
   A.  Administrative Claims. .................................................................................. 24

   B.  DIP Lender Expenses. .................................................................................... 25

   C.  Exit Capital Fees. ........................................................................................... 25

   D.  Professional Fee Claims. ................................................................................ 26

      1.  Final Fee Applications and Payment of Professional Fee Claims. ................ 26

      2.  Administrative Claims of OCPs. ................................................................. 26

      3.  Post-Confirmation Date Fees and Expenses. ............................................... 26

      4.  Professional Fee Account. ........................................................................... 27

   E.  Priority Tax Claims. ....................................................................................... 27

   F.  Statutory Fees. ............................................................................................... 27

ARTICLE III.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .... 28
   A.  Classification of Claims and Interests. ........................................................... 28

   B.  Treatment of Claims and Interests. ................................................................ 29

      1.  Class 1 – Other Secured Claims. ................................................................. 29

      2.  Class 2 – Other Priority Claims. ................................................................. 29

      3.  Class 3 – DIP Claims. ................................................................................. 30

      4.  Class 4 – General Unsecured Claims. .......................................................... 31

      5.  Class 5 – Non-Recourse Claims. ................................................................. 31

      6.  Class 6 – Convenience Class Claims. .......................................................... 32

      7.  Class 7 – Intercompany Claims. .................................................................. 32

      8.  Class 8 – Subordinated Claims. ................................................................... 32

      9.  Class 9 – Existing Equity Interests. ............................................................. 33

      10.  Class 10 – Intercompany Interests. ............................................................. 33

   C.  Special Provision Governing Unimpaired Claims. ......................................... 34

D.   Elimination of Vacant Classes. ................................................................................ 34

E.   Voting Classes, Presumed Acceptance by Non-Voting Classes. ............................... 34

F.   Controversy Concerning Impairment. ...................................................................... 34

G.   Subordination of Claims. ......................................................................................... 34

H.   Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. .. 34

I.   Insurance. ................................................................................................................ 35

ARTICLE IV.   MEANS FOR IMPLEMENTATION OF THE PLAN .................................... 35

A.   General Settlement of Claims and Interests. ............................................................ 35

B.   Wind-Down. ............................................................................................................ 35

C.   Exit Capital Facility. ............................................................................................... 36

D.   Exit Capital Marketing Process. .............................................................................. 36

E.   Liquidating Trust. .................................................................................................... 37

  1.   Interests in Liquidating Trust .......................................................................... 37

  2.   Distribution Schedule ...................................................................................... 38

  3.   Creation and Governance of the Liquidating Trust .......................................... 39

  4.   Liquidating Trust Expenses ............................................................................. 42

  5.   Tax Treatment ................................................................................................. 42

  6.   Single Satisfaction of Allowed Claims from the Liquidating Trust ................. 43

F.   Preservation of Retained Causes of Action. ............................................................ 43

G.   Sources of Consideration for Plan Distributions. .................................................... 44

H.   Cancellation of Existing Securities and Agreements. .............................................. 45

I.   Effectuating Documents; Further Transactions. ...................................................... 45

J.   Vesting of Assets. ................................................................................................... 46

K.   Section 1146 Exemption from Certain Taxes and Fees. .......................................... 46

L.   Corporate Action; Governance. .............................................................................. 47

M.   Dissolution of the Debtors ...................................................................................... 48

N.   Dissolution of the Committee ................................................................................. 48

O.   Closing the Chapter 11 Cases. ................................................................................ 49

P.   Authority to Act. ..................................................................................................... 49

Q.   Separate Plans. ........................................................................................................ 49

ARTICLE V.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES
.................................................................................................................................... 49

A.   Assumption and Rejection of Executory Contracts and Unexpired Leases. ............. 49

B.   Claims Based on Rejection of Executory Contracts or Unexpired Leases. .............. 50

C.  Preexisting Obligations to the Debtors Under Executory Contracts and/or Unexpired Leases. ........................................................................................................ 50

D.  D&O Insurance Policies. ............................................................................... 51

E.  Engagement Letters. ...................................................................................... 51

F.  Reservation of Rights. ................................................................................... 51

G.  Indemnity Obligations. ................................................................................. 52

H.  Modifications, Amendments, Supplements, Restatements, or Other Agreements. .......... 52

I.  Nonoccurrence of Effective Date. ................................................................ 52

J.  Employee Compensation and Benefits. ........................................................ 52

ARTICLE VI.  PROVISIONS GOVERNING DISTRIBUTIONS ............................................. 52

A.  Disbursing Agent. ......................................................................................... 52

B.  Delivery of Distributions and Undeliverable or Unclaimed Distributions. ...................... 53

    1.  Record Date for Distribution. .................................................................. 53

    2.  Delivery of Distributions Generally. ....................................................... 53

    3.  Undeliverable Distributions and Unclaimed Property. ........................... 53

    4.  Surrender of Cancelled Instruments or Securities. ................................. 54

C.  Compliance with Tax Requirements. ............................................................ 54

D.  Date of Distributions. .................................................................................... 55

E.  Rights and Powers of Disbursing Agent. ...................................................... 55

    1.  Expenses Incurred on or After the Effective Date. ................................. 55

F.  Manner of Payment. ...................................................................................... 55

G.  Foreign Currency Exchange Rate. ................................................................ 56

H.  Setoffs and Recoupment. .............................................................................. 56

I.  Minimum Distribution. .................................................................................. 56

J.  Allocations. .................................................................................................... 56

K.  Distributions Free and Clear. ........................................................................ 57

L.  Claims Paid or Payable by Third Parties. ..................................................... 57

    1.  Claims Paid by Third Parties. ................................................................. 57

    2.  Claims Payable by Third Parties. ............................................................ 57

    3.  Applicability of Insurance Policies. ........................................................ 57

M.  No Postpetition Interest on Claims. .............................................................. 58

ARTICLE VII.  PROCEDURES FOR RESOLVING  CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS ............................................................................................... 58

A.  Allowance of Claims and Interests. .............................................................. 58

B.  Claims Administration Responsibilities. ....................................................... 58

iii

C.   Estimation of Claims and Interests. .................................................................. 58

D.   Adjustment to Claims or Interests Without Objection. ...................................... 59

E.   Time to File Objections to Claims. ..................................................................... 59

F.   Disallowance of Claims or Interests. .................................................................. 59

G.   Disallowance of Late Claims. ............................................................................. 59

H.   Disputed Claims Process. .................................................................................... 59

I.   Amendments to Claims. ...................................................................................... 60

J.   No Distributions Pending Allowance. ................................................................ 60

K.   Disputed/Contingent Claims Reserve. ............................................................... 60

L.   Distributions After Allowance. .......................................................................... 61

ARTICLE VIII.  RELEASE, INJUNCTION, AND RELATED PROVISIONS ........................ 61

A.   Debtor Releases. ................................................................................................. 61

B.   Third Party Releases. .......................................................................................... 62

C.   Exculpation. ........................................................................................................ 63

D.   Injunction. ........................................................................................................... 63

E.   Release of Liens. ................................................................................................. 64

ARTICLE IX.  CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ........................... 65

A.   Conditions Precedent to Confirmation. .............................................................. 65

B.   Conditions Precedent to the Effective Date. ...................................................... 65

C.   Waiver of Conditions. ......................................................................................... 66

ARTICLE X.  RETENTION OF JURISDICTION ...................................................................... 67

ARTICLE XI.  MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ..... 69

A.   Modification and Amendment. ........................................................................... 69

B.   Effect of Confirmation on Modifications. .......................................................... 69

C.   Revocation or Withdrawal of Plan. .................................................................... 69

ARTICLE XII.  MISCELLANEOUS PROVISIONS .................................................................. 69

A.   Immediate Binding Effect. .................................................................................. 69

B.   Additional Documents. ....................................................................................... 70

C.   Substantial Consummation. ................................................................................ 70

D.   Reservation of Rights. ........................................................................................ 70

E.   Successors and Assigns. ...................................................................................... 70

F.   Determination of Tax Liabilities. ....................................................................... 70

G.   Notices. ............................................................................................................... 71

H.   Term of Injunctions or Stays. ............................................................................. 71

I.   Entire Agreement. ............................................................................................... 72

J.   Plan Supplement. ................................................................................................ 72

iv

K. Governing Law. ............................................................................................................. 72

L. Nonseverability of Plan Provisions................................................................................. 72

## INTRODUCTION

Harvest Sherwood Food Distributors, Inc. and its Debtor Affiliates (collectively, the "Debtors") jointly propose this Plan under section 1121 of the Bankruptcy Code.  The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Supplemental agreements and documents referenced in this Plan and the Disclosure Statement are available for review on both the Bankruptcy Court's docket and on the Debtors' case information website: https://dm.epiq11.com/case/harvestsherwood/info.

Reference is made to the Disclosure Statement Filed contemporaneously with this Plan for a discussion of the Debtors' history, business, prepetition capital structure, and Liquidation Analysis, as well as a summary and analysis of the Plan and certain related matters, including distributions to be made under this Plan.

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

### ARTICLE I.
### DEFINED TERMS AND RULES OF INTERPRETATION

**A.      Defined Terms.**

As used in this Plan, capitalized terms have the meanings set forth below:

1.      "*Administrative Claim*" means a Claim against any of the Debtors (i) arising on or after the Petition Date and before the Effective Date for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including the following:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the businesses of the Debtors (including wages, salaries, or commissions for services, and payments for goods and other services and leased premises); (b) compensation for legal, financial advisory, accounting, and other services, and reimbursement of expenses pursuant to sections 328, 330(a), or 331 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date and ending on the Effective Date, including Professional Fee Claims; (c) all fees and charges assessed against the Estates pursuant to 28 U.S.C. § 1930, including the Statutory Fees; (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), or (5) of the Bankruptcy Code and to the extent approved by the Bankruptcy Court; and (e) any fees and expenses that are earned and payable pursuant to the Plan and the other Plan Documents, and (ii) arising pursuant to section 503(b)(9) of the Bankruptcy Code.

2.      "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims (other than Claims arising pursuant to section 503(b)(9) of the Bankruptcy Code governed by the General Bar Date, or Claims held by a Debtor (or a direct or indirect subsidiary thereof)), which (a) with respect to Administrative Claims other than Professional Fee Claims, shall be 30 days after the Effective Date and (b) with respect to Professional Fee Claims, shall be 45 days after the Confirmation Date.

1

3.  "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code as if such Entity was a debtor in a case under the Bankruptcy Code.

4.  "*Allowed*" means, with respect to any Claim or Interest, except as otherwise provided herein, any Claim that (a)(i) is evidenced by a Proof of Claim Filed by the applicable Bar Date (or such other date as agreed by the Debtors pursuant to the Bar Date Order or as otherwise approved by the Bankruptcy Court) or a request for payment of an Administrative Claim Filed by the Administrative Claims Bar Date, as applicable, or (ii) is a Claim for which, under the Plan, the Bankruptcy Code, or a Final Order, a Proof of Claim or request for payment of an Administrative Claim is not or shall not be required to be Filed, (b) is listed on the Schedules as of the Effective Date as not Contingent, not Unliquidated, and not Disputed, and for which no contrary or superseding Proof of Claim, as applicable, has been timely Filed, (c) has been compromised, settled, or otherwise resolved pursuant to the authority granted to the Debtors by a Final Order of, or a stipulation approved by, the Bankruptcy Court (including the Final DIP Order), or (d) is allowed pursuant to the Plan, a Final Order, or any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith; *provided, however*, that with respect to any Claim described in clauses (a) or (b) above, such Claim shall be considered Allowed only if, and to the extent that, with respect to such Claim, no objection to the allowance thereof, request for estimation, motion to deem the Schedules amended, or other challenge has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, if any, or such a challenge is so interposed and the Claim shall have been Allowed for Plan Distribution purposes only by a Final Order.  Any Claim that has been or is hereafter listed on the Schedules as Contingent, Unliquidated, or Disputed, and for which no contrary or superseding Proof of Claim has been timely Filed, or that is not or has not been Allowed by a Final Order, is not considered Allowed.  Notwithstanding anything to the contrary herein, to the extent applicable, and without prejudice to the rights of any Holder of an Allowed Administrative Claim to argue that section 502(d) of the Bankruptcy Code is inapplicable to its Administrative Claim, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Post-Effective Date Debtor, as applicable.  For the avoidance of doubt, a Proof of Claim Filed after the applicable Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim or as agreed by the Debtors.  Except as otherwise specified in the Plan or any Final Order, the amount of an Allowed Claim shall not include interest, late fees, or other similar related charges on such Claim from and after the Petition Date.  "*Allow*" and "*Allowing*" shall have correlative meanings.

5.  "*Alternate Return Threshold*" means, as of any measurement date, an amount equal to the sum of (a) the Invested Amount *plus* (b) a 20% rate of return, accruing daily and compounding continuously, on any Contingent Invested Amount, beginning on the Effective Date and ending on the date on which holders of the Series A Liquidating Trust Interests receive Distributable Cash in an amount in the aggregate equal to the Alternate Return Threshold B Amount.

6.  "*Alternate Return Threshold A Amount*" means, as of any measurement date, an amount equal to the sum of the product of (a) 2.00 *multiplied by* (b) the Alternate Return Threshold.

2

7.     "*Alternate Return Threshold B Amount*" means, as of any measurement date, an amount equal to the product of (a) 3.00 *multiplied by* (b) the Alternate Return Threshold.

8.     "*Alternative Transaction*" shall have the meaning ascribed to it in the Exit Capital Commitment Agreement.

9.     "*Alternative Transaction Election*" means the Debtors' decision to enter into an Alternative Transaction that satisfies the requirements set forth in the Exit Capital Commitment Agreement.

10.     "*Antitrust Counsel*" means Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

11.     "*Antitrust Counsel Engagement Letters*" means those certain engagement letters by and between Harvest Sherwood Food Distributors, Inc., and the Antitrust Counsel approved by the Bankruptcy Court during these Chapter 11 Cases.

12.     "*Antitrust Litigation Claims*" means the claims held by the Debtors against several pork, chicken, and beef producers in various ongoing and prospective antitrust and price-fixing proceedings, whether asserted by the Debtors prior to, on, or after the Effective Date.

13.     "*Antitrust Litigation Claim Proceeds*" means any Distributable Cash solely derived from Proceeds (as defined in the Capital Provision Agreement).

14.     "*Arrangement Fee*" has the meaning given to it in that certain Harvest DIP Fee Letter, dated as of April 30, 2025, by and among the DIP Agent and the Debtors party thereto.

15.     "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination, or other Claims, Causes of Action, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code or applicable non-bankruptcy Law, including Claims, Causes of Action, or remedies under sections 502, 510, 542, 544, 545, 547 through and including 553, and 724(a) of the Bankruptcy Code or under similar local, state, federal, or foreign statutes and common Law, including fraudulent and voidable transfer Laws.

16.     "*Ballots*" means the ballots, in form and substance acceptable to the Debtors, the Plan Sponsors, the Committee (such acceptance not to be unreasonably withheld, conditioned, or delayed), and the DIP Agent, provided to each of the Holders of Claims entitled to vote to accept or reject the Plan, including, as applicable, any E-Ballots, upon which Holders of Claims entitled to vote on the Plan shall cast their vote to accept or reject the Plan.

17.     "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as may be amended from time to time.

18.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division or such other court having primary, non-appellate jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of the *Order of Reference of*

3

*Bankruptcy Cases and Proceedings Nunc Pro Tunc*, dated August 3, 1984, entered by the United States District Court for the Northern District of Texas.

19.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of title 28 of the United States Code and the general, local, and chambers rules of the Bankruptcy Court, each, as may be amended from time to time.

20.    "*Bar Date Order*" means the *Order (I) Setting Bar Dates for Filing Proofs of Claim; (II) Approving the Form and Manner for Filing Proofs of Claim; (III) Approving the Notice of Bar Dates, and (IV) Granting Related Relief* [Docket No. 434].

21.    "*Bar Date*" means, as applicable, the Administrative Claims Bar Date, the General Bar Date, the Governmental Bar Date, and the Rejection Damages Bar Date.

22.    "*Business Day*" means any day other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)) or other day on which commercial banks are authorized to close under the Laws of, or are in fact closed in, the state of New York.

23.    "*Capital Providers*" has the meaning set forth in the JBS Settlement Order or the Pilgrim's Pride Settlement Order, as applicable.

24.    "*Capital Provision Agreement*" means that certain agreement dated as of December 21, 2022 between Hamilton Meat, L.L.C., Harvest Meat Company, Inc., Harvest Sherwood Food Distributors, Inc., Sherwood Food Distributors, L.L.C., and Western Boxed Meat Distributors, Inc., on the one hand, and each of Blakemore Investments LLC, a limited liability company, and Milwaukee Investments LP, a limited partnership, on the other hand.

25.    "*Cash*" means cash in legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other similar items.

26.    "*Causes of Action*" means any Claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, in law (or any applicable rule, statute, regulation, treaty, right, duty or requirement), equity, contract, tort, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment; (b) claims under contracts or for breaches of duties imposed by law; (c) the right to object to or otherwise contest Claims or Interests; (d) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; (e) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any claim under any state or foreign law, including, without limitation, any fraudulent transfer or similar claim.

27.    "*Certification Deadline*" means the last day on which Holders of General Unsecured Claims and Non-Recourse Claims will be able to deliver their Certification Forms to the Debtors, which date shall be set forth in one or more notices delivered to such Holders by the

4

Debtors and which shall be subject to extension with the consent of the Plan Sponsors, the Debtors, the Committee, and the DIP Agent.

28.    "*Certification Form*" means the form or forms, in form and substance acceptable to the Debtors, the Plan Sponsors, the Committee, and the DIP Agent, distributed to Holders of General Unsecured Claims and Non-Recourse Claims that are entitled to vote on the Plan pursuant to which each such Holder may indicate whether it is an "accredited investor" as defined in Regulation D under the Securities Act.

29.    "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor or group of Debtors, the chapter 11 case or cases pending for that Debtor or group of Debtors under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

30.    "*Claim*" means any "claim," as defined in section 101(5) of the Bankruptcy Code, against the Debtors or the Estates.

31.    "*Claims and Noticing Agent*" means Epiq Corporate Restructuring, Inc., in its capacity as noticing, claims, and solicitation agent for the Debtors in the Chapter 11 Cases, as approved by the *Order Authorizing the Retention and Employment of Epiq Corporate Restructuring, LLC as Claims, Noticing, and Solicitation Agent Effective as of the Petition Date* [Docket No. 66].

32.    "*Claims Objection*" means an objection to the allowance of a Claim as set forth in section 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and/or any Bankruptcy Court order regarding omnibus claims objections.

33.    "*Claims Objection Deadline*" means 11:59 p.m. (prevailing Central Time) on the 730th calendar day after the Effective Date, subject to further extensions or exceptions as may be ordered by the Bankruptcy Court.

34.    "*Claims Register*" means the official register of Claims maintained by the Claims and Noticing Agent.

35.    "*Class*" means a category of Claims or Interests as established by and set forth in Article III herein pursuant to section 1122(a) of the Bankruptcy Code.

36.    "*Claw-Back Contingent Exposure*" means $40,000,000.00; *provided*, *however*, that nothing in the Plan or the Confirmation Order shall be construed as, or deemed to be, an admission that any such amounts are due and owing or that the Capital Providers otherwise have any priority over the DIP Obligations (as defined in the DIP Orders) or any obligations owed to the Plan Sponsors.

37.    "*Claw-Back Event*" means any event that would (a) permit the Capital Providers to claw back or disgorge from any of the DIP Lenders all or any portion of the Settlement Payments or (b) otherwise require any DIP Lender to pay any other amount to the Capital Providers, in each case in accordance with the Settlement Orders.

5

38. "*Claw-Back Order*" means a Final Order determining that (a) the Settlement Payments are not and shall not be subject to claw back and (b) the DIP Lenders are not and shall not be liable to disgorge or otherwise pay any amounts in connection with the Settlement Orders.

39. "*Committee*" means the official committee of unsecured creditors appointed by the U.S. Trustee on May 21, 2025 under section 1102(b) of the Bankruptcy Code in these Chapter 11 Cases [Docket No. 148 as amended by Docket No. 553].

40. "*Company-Related Matters*" means anything related to the Debtors (including the management, ownership, or operation thereof), the purchase, sale, amendment, or recission of any Claim against or Interest in the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the Debtors' intercompany transactions, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or Filing of, as applicable, the Chapter 11 Cases, any related adversary proceedings, the Prepetition Credit Documents (as defined in the DIP Orders), the DIP Documents, the Exit Capital Facility Documents, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), and any transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.

41. "*Complex Case Procedures*" means the Procedures for Complex Cases in the Northern District of Texas, effective February 6, 2023.

42. "*Conditions Precedent*" means the conditions set forth in Article IX herein.

43. "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

44. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket in these Chapter 11 Cases.

45. "*Confirmation Hearing*" means the hearing(s) conducted by the Bankruptcy Court to consider final approval of the Disclosure Statement and Confirmation of the proposed Plan under section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

46. "*Confirmation Order*" means the order of the Bankruptcy Court (a) approving the Disclosure Statement on a final basis pursuant to section 1125 of the Bankruptcy Code, (b) confirming the Plan pursuant to section 1129 of the Bankruptcy Code, and (c) granting other related relief in form and substance acceptable to the Debtors, the Plan Sponsors, the DIP Agent, and the Committee, including all exhibits, appendices, supplements, and related documents.

47.    "*Consummation*" means the occurrence of the Effective Date.

48.    "*Contingent*" means, when used in reference to a Claim, any Claim, the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event that has not yet occurred as of the date on which such Claim is sought to be estimated or on which an objection to such Claim is Filed, whether or not such event is within the actual or presumed contemplation of the Holder of such Claim and whether or not a relationship between the Holder of such Claim and the applicable Debtor now or hereafter exists or previously existed.

49.    "*Contingent DIP Claims*" means any DIP Claims that, upon a Claw-Back Event, are reinstated in accordance with the Settlement Orders.

50.    "*Contingent Exit Capital Facility*" means a contingent line in the amount of the Claw-Back Contingent Exposure, which can be drawn upon the occurrence of a Claw-Back Event.

51.    "*Contingent Invested Amount*" means, as of any measurement date, the aggregate amount of all Cash provided by the Plan Sponsors on or prior to such measurement date to the Debtors, the Post-Effective Date Debtors, or the Liquidating Trust, as applicable, or as otherwise required pursuant to the Claw-Back Event.

52.    "*Convenience Class Claims*" means the General Unsecured Claims of a Holder (a) whose General Unsecured Claims are, in the aggregate, equal to or less than the Convenience Class Threshold or (b) that agrees to reduce the amount of its General Unsecured Claims to the Convenience Class Threshold pursuant to the Convenience Class Election; *provided* that, for the avoidance of doubt, General Unsecured Claims in an amount in excess of the Convenience Class Threshold may not be sub-divided into multiple General Unsecured Claims equal to or less than the Convenience Class Threshold in order to receive treatment as multiple Convenience Class Claims.

53.    "*Convenience Class Cash Pool*" means $1,340,000.00 in Cash for purposes of funding distributions to Holders of Allowed Convenience Class Claims pursuant to the Plan in the event that Class 6 votes to accept the Plan.

54.    "*Convenience Class Election*" means an irrevocable election made on a Ballot by the Holder of a Claim that would otherwise be a General Unsecured Claim to (a) reduce such Claim to the Convenience Class Threshold and (b) vote such Claim to accept the Plan.

55.    "*Convenience Class Threshold*" means $5,400.00.

56.    "*Cure*" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed or assumed and assigned by the Debtors.

57.    "*D&O Liability Insurance Policies*" means all directors', managers', and officers', or employees' liability insurance policies (including any "tail policy" or excess policies) of any of the Debtors that have been issued or provide coverage at any time to current or former directors,

7

managers, officers, or employees of the Debtors, and any and all agreements, documents, or instruments related thereto.

58. "*Debtor Releases*" means the releases set forth in Article VIII.A herein.

59. "*Debtors*" means Harvest Sherwood Food Distributors, Inc. and its Debtor Affiliates, including Del Mar Holding LLC, Del Mar Acquisition Inc., Surfliner Holdings, Inc., Harvest Meat Company, Inc., LAMCP Capital, LLC, Western Boxed Meats Distributors, Inc., Cascade Food Brokers, Inc., Hamilton Meat, LLC, SFD Acquisition LLC, SFD Transportation Corp., Sherwood Food Distributors, L.L.C., and SFD Company LLC, each as a debtor and debtor in possession.

60. "*DIP Agent*" means JPMorgan Chase Bank, N.A., as administrative agent under the DIP Credit Agreement.

61. "*DIP Claims*" means, any and all Claims arising under, derived from, or based upon the DIP Loan Documents, which DIP Claims, except as expressly stated otherwise herein, shall have the priorities set forth in the DIP Credit Agreement and/or the DIP Facility Documents, as applicable, and the DIP Orders.

62. "*DIP Collateral*" means all prepetition and postpetition property of the Debtors, including the Antitrust Litigation Claims and the Sprouts Farmers Market Litigation Claims, and proceeds from the disposition of the foregoing (as applicable), whether existing on the Petition Date or thereafter acquired and wherever located.

63. "*DIP Credit Agreement*" means that certain Credit Agreement (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, including as amended by that certain Amendment No. 1 to Credit Agreement, dated as of October 10, 2024, and that certain Amendment No. 2 to Credit Agreement, dated as of March 18, 2025), with the lenders party thereto and the DIP Agent.

64. "*DIP Facility*" means the senior secured superpriority debtor-in-possession financing facility for the DIP Loans, in the aggregate principal amount of $105,000,000, with a first Lien entered into on the terms and conditions set forth in the DIP Facility Documents.

65. "*DIP Facility Documents*" means any documents governing the DIP Facility that are entered into in accordance with the DIP Credit Agreement, and the DIP Order, and any amendments, modifications, and supplements thereto, and together with any related notes, certificates, agreements, security agreements, documents, and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection therewith.

66. "*DIP Lender Expenses*" means all reasonable and documented fees, costs, and expenses of the DIP Lender Professionals incurred in connection with these Chapter 11 Cases.

67. "*DIP Lenders*" has the meaning set forth in the DIP Credit Agreement and the DIP Facility Documents.

68.     "*DIP Lender Professional(s)*" means (a) Cleary Gottlieb Steen & Hamilton LLP, as counsel to the DIP Agent, (b) Latham & Watkins LLP, as counsel to the DIP Agent, (c) Hunton Andrews Kurth LLP, as local counsel to the DIP Agent, and (d) Huron Consulting Group, as financial advisor to the DIP Agent.

69.     "*DIP Loan*" means the loans provided under the DIP Facility.

70.     "*DIP Loan Documents*" means, collectively, the DIP Orders, the DIP Facility, the DIP Credit Agreement, and related security agreements and other documents required or requested by the DIP Lender to be executed or delivered by or in connection with the DIP Credit Agreement (each as may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof).

71.     "*DIP Orders*" means the interim and Final Orders entered by the Bankruptcy Court approving the Debtors' entry into the DIP Credit Agreement and the DIP Facility in these Chapter 11 Cases.

72.     "*Disallowed*" means, with respect to a Claim or any portion thereof, (a) an objection to the Claim has been Filed, (b) the Claim has been disallowed, subordinated, or expunged, in whole or in part, by a Final Order or stipulation, (c) the Claim has been withdrawn, in whole or in part, (d) the Claim is listed in the Schedules as zero or as Disputed, Contingent, or Unliquidated and in respect of which a Proof of Claim has not been timely Filed or deemed timely Filed pursuant to the Disclosure Statement, the Plan, the Bankruptcy Code, or any Final Order of the Bankruptcy Court (including the Bar Date Order), (e) the Claim has been reclassified, expunged, subordinated, or estimated to the extent that such reclassification, expungement, subordination, or estimation results in a reduction in amount reflected on the Schedules or the applicable Proof of Claim, or (f) the Claim is evidenced by a Proof of Claim which was not timely or properly Filed; *provided, however*, that a Disputed Claim shall not be considered Disallowed until so determined by entry of a Final Order.

73.     "*Disbursing Agent*" means the Liquidating Trustee or any Entity designated or retained by the Liquidating Trustee (without the need for any further order of the Bankruptcy Court) to make or facilitate Plan Distributions.

74.     "*Disclosure Statement*" means the *Second Amended Disclosure Statement for the Joint Chapter 11 Plan of Harvest Sherwood Food Distributors, Inc. and Its Debtor Affiliates*, Filed contemporaneously herewith (as may be amended, supplemented, or modified from time to time thereafter in form and substance acceptable to the Plan Sponsors, the Debtors, the DIP Agent ,and the Committee, including all exhibits and schedules thereto.

75.     "*Disclosure Statement Objection Deadline*" means the deadline for Filing and serving objections to the final approval of the Disclosure Statement.

76.     "*Disputed*" means, with respect to a Claim or any portion thereof, (a) any such Claim to the extent neither Allowed nor Disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503, or 1111 of the Bankruptcy Code, or (b) to the extent that the Debtors or the Post-Effective Date Debtors, as applicable, or any party in interest has interposed a timely objection before the deadlines imposed by the Confirmation Order, which objection has not

been withdrawn or determined by a Final Order. To the extent that only a portion of a Claim is disputed, such Claim shall be deemed Allowed in the amount not disputed, if any, and Disputed as to the balance of such Claim.

77.    "*Disputed/Contingent Claims Reserve*" means a reserve to be established in accordance with the Liquidating Trust Agreement on or before each distribution date in the amount of the applicable Disputed/Contingent Claims Reserve Amount.

78.    "*Disputed/Contingent Claims Reserve Amount*" means, for each distribution date, Distributable Cash in an amount to be determined in accordance with the Liquidating Trust Agreement for distributions on account of Disputed Claims or Contingent Claims that are subsequently Allowed after the applicable distribution date, in accordance with Article VII.I of the Plan.

79.    "*Distributable Cash*" means all Cash held as of the Effective Date or generated by the monetization of the Liquidating Trust Assets, as applicable, on or after the Effective Date, other than such Cash as is necessary to (a) fund the Professional Fee Account; (b) pay the Statutory Fees; (c) pay the DIP Lender Expenses; (d) pay the Arrangement Fee; (e) pay the Exit Capital Fees; (f) pay the Contingent DIP Claims, if any, (g) pay the Allowed Other Secured Claims; (h) pay any regular installment payments of the Allowed Other Priority Claims; and (i) fund the Post-Effective Budget and Wind-Down.

80.    "*Distribution Record Date*" means, except as otherwise set forth herein, the date or dates determined by the Liquidating Trustee, on or after the Effective Date, upon which the Disbursing Agent shall make Plan Distributions to Holders of Allowed Claims or Allowed Interests entitled to receive Plan Distributions.

81.    "*Distribution Schedule*" has the meaning set forth in Article IV.E herein.

82.    "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which (a) the Confirmation Order shall have become a Final Order, (b) all conditions precedent to the occurrence of the Effective Date set forth in the Plan have been satisfied or waived in accordance with the Plan, and (c) the Debtors declare the Plan effective. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter and shall otherwise be deemed in compliance with the Plan and Confirmation Order.

83.    "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

84.    "*Estate*" means, as to each Debtor, the bankruptcy estate created for the Debtor pursuant to section 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

85.    "*Exculpated Party*" means (a) the Debtors, (b) each director of the Debtors, and (c) the Committee and each of its members (solely in their respective capacities as such).

86.    "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 or 1123 of the Bankruptcy Code.

87.    "*Existing Equity Interests*" means the existing Interests in Del Mar Holding, LLC.

88.    "*Exit Capital Commitments*" means, collectively, the Exit Capital New-Money Commitments and the Exit Capital Contingent Commitments.

89.    "*Exit Capital Commitment Agreement*" means the exit capital commitment agreement attached as an exhibit to the Exit Capital Commitment Motion and to be entered into by and among the Debtors and the Plan Sponsors (as may be amended, restated, supplemented, or otherwise modified from time to time in form and substance acceptable to the Plan Sponsors, the Debtors, the DIP Agent, and the Committee).

90.    "*Exit Capital Commitment Motion*" means the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a), 363(b), 503, and 507 and Fed. R. Bankr. P. 6004 for Entry of an Order (I) Authorizing the Debtors to Enter into the Exit Capital Commitment Agreement, (II) Approving Performance of All Obligations Thereunder, and (III) Granting Related Relief* [Docket No. 761].

91.    "*Exit Capital Commitment Fee*" shall have the meaning ascribed to it in the Exit Capital Commitment Agreement.

92.    "*Exit Capital Contingent Commitment*" means the portion of the Contingent Exit Capital Facility that each Plan Sponsor has committed to fund as set forth in the Exit Capital Commitment Agreement.

93.    "*Exit Capital Facility*" means the exit capital facility provided by the Plan Sponsors consisting of (a) the Refinancing Exit Capital Facility; (b) the New-Money Exit Capital Facility; and (c) the Contingent Exit Capital Facility.

94.    "*Exit Capital Facility Documents*" means, collectively, the Exit Capital Commitment Agreement, the Exit Capital Order, and any other documents required or requested by the Plan Sponsors to be executed or delivered by or in connection with the Exit Capital Facility (each as may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof), each of which shall be in form and substance acceptable to the Plan Sponsors, the Debtors, the DIP Agent, and the Committee (such acceptance not to be unreasonably withheld, conditioned, or delayed).

95.    "*Exit Capital Fees*" means, collectively, the Exit Capital Commitment Fee and the Exit Capital Structuring Fee.

96.    "*Exit Capital New-Money Commitment*" means the portion of the New-Money Exit Capital Facility that each Plan Sponsor has committed to fund as set forth in the Exit Capital Commitment Agreement.

97.    "*Exit Capital Order*" means a Final Order of the Bankruptcy Court, which shall be in the form attached to the Exit Capital Commitment Motion or otherwise in form and substance acceptable to the Plan Sponsors, the Debtors, the DIP Agent, and the Committee (such acceptance not to be unreasonably withheld, conditioned, or delayed), approving and authorizing the Debtors' entry into the Exit Capital Commitment Agreement and their performance thereunder, including,

without limitation, approval of the Exit Capital Commitment Fee and the Exit Capital Structuring Fee.

98.    "*Exit Capital Structuring Fee*" shall have the meaning ascribed to it in the Exit Capital Commitment Agreement.

99.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases, or in the case of a Proof of Claim, the Claims and Noticing Agent.

100.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek leave to appeal, or seek certiorari has expired and no appeal or petition for certiorari or motion for leave to appeal has been timely taken, or as to which any appeal that has been taken or any petition for certiorari or motion for leave to appeal that has been or may be filed, has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari or leave to appeal could be or was sought, or the new trial, reargument, petition for certiorari, leave to appeal, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; provided, that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules.

101.    "*General Bar Date*" has the meaning set forth in the Bar Date Order.

102.    "*General Unsecured Claim*" means any Claim against any of the Debtors that is not one of the following Claims:  (a) Administrative Claim (including a Professional Fee Claim or a Claim related to Statutory Fees); (b) Priority Tax Claim; (c) Other Secured Claim; (d) Other Priority Claim; (e) Convenience Class Claim; (f) Subordinated Claim; (g) Intercompany Claim; (h) DIP Claim; or (i) Non-Recourse Claim.

103.    "*Governmental Bar Date*" has the meaning set forth in the Bar Date Order.

104.    "*Governmental Unit(s)*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

105.    "*Governing Body*" means, in each case in its capacity as such, the board of directors, board of managers, manager, managing member, general partner, investment committee, special committee, or such similar governing body of any of the Debtors.

106.    "*GUC Recovery Threshold*" means, as of any measurement date, (a) the Non-Contingent Invested Amount *plus* (b) a 3.50% rate of return, accruing daily and compounding continuously, on any undrawn commitments under the Contingent Exit Capital Facility, beginning on the Effective Date and ending on the date on which a Claw-Back Order is entered.

107.    "*Hilco*" means, collectively, Hilco Commercial Industrial, LLC and Hilco Receivables, LLC.

108.    "*Hilco Engagement Letter*" means that certain *Hilco Services and Other Arrangements Letter*, dated April 25, 2025 by and between Harvest Sherwood Food Distributors, Inc. and Hilco for professional services provided by Hilco.

109.    "*Holder*" means a Person or Entity, as applicable, holding a Claim against or an Interest in any of the Debtors.

110.    "*Impaired*" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

111.    "*Indemnification Obligations*" means, collectively, each of the Debtors' indemnification obligations (whether in charters, bylaws, limited liability company agreements, or other organizational documents) in place as of the Effective Date to indemnify current and former officers, directors, agents, or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such officers, directors, agents, or employees based upon any act or omission for or on behalf of the Debtors.

112.    "*Initial New-Money Capital*" means $29,478,350.

113.    "*Insurance Policies*" means all insurance policies that have been issued at any time to or provide coverage to the Debtors or their Related Parties and all agreements, documents, or instruments relating thereto, including, for the avoidance of doubt, the D&O Liability Insurance Policies.

114.    "*Intercompany Claim*" means any Claim against a Debtor that is held by another Debtor or an Affiliate of a Debtor.

115.    "*Intercompany Interest*" means an Interest in a Debtor that is held by another Debtor or an Affiliate of a Debtor.

116.    "*Interest(s)*" means, collectively, any equity security (as defined in section 101(16) of the Bankruptcy Code) in a Debtor, including any issued or unissued share of common stock, preferred stock, or other instrument evidencing any other equity, ownership, or profits interests in a Debtor, whether or not transferable, including membership interests in limited liability companies and partnership interests in partnerships, and any option, warrant, right, or other security or agreement, contractual or otherwise, to acquire or subscribe for, or which are convertible into any shares (or any class thereof) of, any such interest in a Debtor that existed immediately prior to the Effective Date, and any award of stock options, restricted stock units, equity appreciation rights, restricted equity, or phantom equity granted to an existing employee of the Debtors pursuant to any equity plan maintained by the Debtors or under any existing employment agreement of the Debtors' existing employees, other than Intercompany Interests.

117.    "*Invested Amount*" means, as of any measurement date, the sum of (a) the Contingent Invested Amount *plus* (b) the Non-Contingent Invested Amount.

118.    "*Investment Company Act*" means the Investment Company Act of 1940, as amended, and the rules and regulations promulgated thereunder.

119. "*Investment Date(s)*" means (a) with respect to the principal amount of the Refinancing Exit Capital Facility, the Effective Date and (b) with respect to Cash provided by the Plan Sponsors to the Debtors, the Post-Effective Date Debtors, or the Liquidating Trust, as applicable, pursuant to the New-Money Exit Capital Facility or the Contingent Exit Capital Facility, each date on which such Cash is provided.

120. "*IRC*" means the Internal Revenue Code of 1986, as amended.

121. "*IRS Form*" means IRS Form W-9, W-8BEN, any acceptable substitute, or any other tax information form that the Liquidating Trustee may require from a Holder of a Claim or Interest to receive a distribution under the Plan.

122. "*JBS Settlement Consideration*" means the "Settlement Consideration" as defined in the JBS Settlement Order.

123. "*JBS Settlement Order*" means the *Order (A) Approving a Settlement Agreement with JBS USA Food Company, JBS USA Food Company Holdings, and Swift Pork Company Pursuant to Federal Rule of Bankruptcy Procedure 9019 and (B) Granting Related Relief* [Docket No. 409].

124. "*Junior Distribution Holders*" means (a) *first*, pro rata to holders of the Series B-1 Liquidating Trust Interests, Series B-2 Liquidating Trust Interests, Series B-3 Liquidating Trust Interests, and Series B-4 Liquidating Trust Interests, until such holders have received Distributable Cash in an amount in the aggregate equal to their Allowed General Unsecured Claims; *provided* that, for the avoidance of doubt, (i) the Series B-1 Liquidating Trust Interests and the Series B-2 Liquidating Trust Interests shall be treated *pari passu* with each other in all respects, and (ii) the Series B-3 Liquidating Trust Interests and Series B-4 Liquidating Trust Interests shall be treated *pari passu* with each other in all respects, in each case within the applicable category of Distributable Cash, and shall receive identical rights and entitlements under the Liquidating Trust Agreement, except solely (x) to the extent necessary to reflect the distinction between Qualified and Non-Qualified Holders and (y) that participation of the Series B-3 Liquidating Trust Interests and Series B-4 Liquidating Trust Interests shall be limited to distributions of Distributable Cash derived solely from Antitrust Litigation Claim Proceeds, in each case as expressly set forth in the Plan; (b) *second*, pro rata to holders of the Series C Liquidating Trust Interests until such holders have received Distributable Cash in an amount in the aggregate equal to their Allowed Subordinated Claims; and (c) *third*, pro rata to holders of the Series D Liquidating Trust Interests.

125. "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

126. "*Lien*" means a "lien," as defined in section 101(37) of the Bankruptcy Code.

127. "*Liquidation Analysis*" means the analysis of a liquidation scenario under chapter 7 of the Bankruptcy Code for these Debtors, attached to the Disclosure Statement (as such analysis may be updated, amended, or modified from time to time thereafter).

14

128.    "*Liquidating Trust Advisory Board*" means a board appointed on the Effective Date, pursuant to the Liquidating Trust Agreement, to (a) instruct and supervise the Liquidating Trustee with respect to its responsibilities under the Plan and the Liquidating Trust Agreement and (b) review and approve decisions of the Liquidating Trustee as set forth in the Liquidating Trust Agreement.

129.    "*Liquidating Trust Advisory Board Bylaws*" means the bylaws to be adopted by the Liquidating Trust Advisory Board on the Effective Date, which shall set forth the governance of the Liquidating Trust Advisory Board and its members, the terms of which shall in form and substance acceptable to the Debtors, the Plan Sponsors, the DIP Agent, and the Committee.

130.    "*Liquidating Trust Agreement*" means the trust agreement establishing and delineating the terms and conditions for creation and operation of the Liquidating Trust.

131.    "*Liquidating Trust Assets*" means all the assets of the Debtors or the Post-Effective Date Debtors, as applicable, to be vested in the Liquidating Trust from and after the Effective Date.

132.    "*Liquidating Trust Beneficiaries*" means holders of the Liquidating Trust Interests as described in Article IV.E herein.

133.    "*Liquidating Trust Expenses*" means any and all reasonable and documented fees, costs, and expenses incurred by the Liquidating Trust or the Liquidating Trustee (or any Disbursing Agent, Person, entity, or professional engaged by the Debtors or the Liquidating Trustee to effect distributions or otherwise assist the Liquidating Trustee with its duties under the Liquidating Trust Agreement) in connection with any of their duties under the Plan and the Liquidating Trust Agreement.

134.    "*Liquidating Trust Interests*" means the interests in the Liquidating Trust as described in Article IV.E herein.

135.    "*Liquidating Trustee*" means such person selected as set forth in the Liquidating Trust Agreement and identified in the Plan Supplement, who, upon entry of the Confirmation Order, shall have the Bankruptcy Court's approval, on the Effective Date, to (a) serve as the trustee and administrator for the Liquidating Trust and (b) take such other actions as may be authorized under the Liquidating Trust Agreement pursuant to its terms, and any successor thereto.

136.    "*Material Settlement*" means the settlement of (a) any litigation in or appeals of the Sprouts Adversary Proceeding or (b) any Antitrust Litigation Claim in accordance with the terms and conditions set forth in the Liquidating Trust Agreement.

137.    "*Meru*" means Meru, LLC.

138.    "*Meru Engagement Letter*" means that certain *Letter*, dated April 25, 2025, as amended by that certain *Amendment No. 1*, dated as of March 12, 2026, by and between Harvest Sherwood Food Distributors, Inc. and Meru for professional services provided by Meru.

139.    "*New Equity Interest*" means the new equity interest in the Post-Effective Date Debtors issued in accordance with the terms of the Plan.

140.    "*New-Money Exit Capital Facility*" means new-money exit capital to be provided by the Plan Sponsors in the amount of the Initial New-Money Capital, which can be increased by up to $5,000,000.00 in accordance with the terms and conditions set forth in the Exit Capital Commitment Agreement.

141.    "*Non-Contingent Invested Amount*" means, as of any measurement date, the sum of (a) the principal amount of the Refinancing Exit Capital Facility as of the Effective Date plus (b) the aggregate amount of all Cash provided by the Plan Sponsors on or prior to such measurement date to the Debtors, the Post-Effective Date Debtors, or the Liquidating Trust, as applicable, pursuant to the New-Money Exit Capital Facility.

142.    "*Non-Qualified Holder*" means any Holder of an Allowed General Unsecured Claim or Allowed Non-Recourse Claim who is not a Qualified Holder.  Any Holder of an Allowed General Unsecured Claim or an Allowed Non-Recourse Claim who does not provide the Certification Form on or prior to the Certification Deadline shall be deemed to be a Non-Qualified Holder.

143.    "*Non-Recourse Claims*" means any unsecured Claim arising under, or related to, a prepetition agreement, instrument, or transaction that by its express terms is non-recourse to the Debtors and payable or enforceable only from a specified source of payment or fund, such that the Holders of such Claims have no recourse to the general assets of the Debtors or the Estates for payment of such Claims, to the extent the Bankruptcy Court determines that such prepetition agreement, instrument, or transaction grants to such Holder an Allowed Claim.

144.    "*Non-Voting Classes*" means Class 1, Class 2, Class 7, and Class 10.

145.    "*Notice of Non-Voting Status Package*" means the materials, which shall be in form and substance acceptable to the Debtors, the Plan Sponsors, the Committee, and the DIP Agent, sent to Holders of Claims and Interests in the Non-Voting Classes, including the Opt-Out Form.

146.    "*OCP*" means an ordinary course professional whose retention and compensation has been authorized by the Bankruptcy Court by entry of the OCP Order.

147.    "*OCP Order*" means the *Order (I) Authorizing the Debtors to Retain and Compensate Professionals Utilized in the Ordinary Course of Business; (II) Approving the Ordinary Course Professionals Procedures; and (III) Granting Related Relief* [Docket No. 436].

148.    "*Opt-Out Form*" means the form (including the E-Opt-Out Form), which shall be in form and substance acceptable to the Debtors, the Plan Sponsors, the Committee, and the DIP Agent, through which Holders of Claims or Interests in Non-Voting Classes can affirmatively elect to "opt out" of being a Releasing Party, as further set forth thereon and in the Solicitation Order.

149.    "*Other Administrative Claims*" means any Administrative Claims that are Statutory Fees, DIP Lender Expenses, Exit Capital Fees, or Professional Fee Claims against a Debtor or Post-Effective Date Debtor, as applicable.

16

150.    "*Other Priority Claim*" means a Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

151.    "*Other Secured Claim*" means any Claim against a Debtor where, pursuant to section 506(a) of the Bankruptcy Code, the Claim is secured by a valid, perfected, and enforceable Lien, which is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title, or interest of the Debtor in and to property of the Estate, to the extent of the value of the Debtor's interest in such property as of the relevant determination date.

152.    "*Parent*" means Del Mar Holding, LLC.

153.    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

154.    "*Petition Date*" means May 5, 2025, the date on which each of the Debtors Filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing these Chapter 11 Cases.

155.    "*Pilgrim's Pride Settlement Payment*" means the "Settlement Payment" as defined in the Pilgrim's Pride Settlement Order.

156.    "*Pilgrim's Pride Settlement Order*" means the *Order (A) Approving a Settlement Agreement with Pilgrim's Pride Corporation Pursuant to Federal Rule of Bankruptcy Procedure 9019 and (B) Granting Related Relief* [Docket No. 488].

157.    "*Plan*" means this joint plan under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof, including all appendices, exhibits, schedules, and supplements (including any Plan Supplements) hereto.

158.    "*Plan Distribution*" means a payment or distribution to Holders of Allowed Claims or Allowed Interests under this Plan, including the vesting of the Liquidating Trust Assets in the Liquidating Trust.  For the avoidance of doubt, the issuance of the Liquidating Trust Interests to the Liquidating Trustee in accordance with the Plan shall constitute the "Plan Distribution" made to each Holder of an Allowed Claim or Allowed Interest and subsequent Cash distributions made by the Liquidating Trust shall not be considered a "Plan Distribution."

159.    "*Plan Documents*" means the documents (other than the Plan) to be executed, delivered, assumed, and performed in conjunction with the Consummation of the Plan on, prior to, or after the Effective Date, including any documents included in the Plan Supplement, which, subject to all other provisions of this Plan, shall be in form and substance acceptable to the Debtors, the Plan Sponsors, the DIP Agent, and the Committee.

160.    "*Plan Objection Deadline*" means the deadline for Filing and serving objections to the confirmation of the Plan.

161.    "*Plan Sponsors*" means, collectively, JPMorgan Chase Funding Inc. and Asperity Investors LLC.

162.    "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits, of which an initial draft will be Filed by the Voting Deadline, which may include, as and to the extent applicable, the Schedule of Retained Causes of Action, the Liquidating Trust Agreement, and any other documentation that is contemplated by the Plan.  Prior to the Effective Date, the Debtors shall have the right to alter, amend, modify, or supplement the documents contained in the Plan Supplement, in each case in form and substance acceptable to the Debtors, the Plan Sponsors, the DIP Agent, and the Committee (such acceptance not to be unreasonably withheld, conditioned, or delayed).

163.    "*Post-Effective Budget*" means a two-year budget to implement the Wind-Down, which shall (a) prior to the Effective Date, be in substance and form acceptable to the Plan Sponsors, the DIP Agent, and the Committee, and (b) from and after the Effective Date, may be extended and/or modified in accordance with the Liquidating Trust Agreement.

164.    "*Post-Effective Date Debtors*" means, collectively, the Debtors and any successors thereto, whether by merger, consolidation, or otherwise, on and after the Effective Date.

165.    "*Priority Tax Claim*" means a Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

166.    "*Pro Rata*" means, as applicable, the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, or the proportion that Allowed Claims or Allowed Interests in a particular Class bear to the aggregate amount of Allowed Claims or Allowed Interests in such particular Class and other Classes entitled to share in the same recovery as such Allowed Claim or Allowed Interest under the Plan.

167.    "*Professional*" means a Person or an Entity (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with section 327, 328, 330, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to (i) sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code or (ii) a Final Order authorizing such retention or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code (excluding those Entities entitled to compensation for services rendered after the Petition Date in the ordinary course of business pursuant to or in accordance with a Final Order granting such relief).

168.    "*Professional Fee Claim*" means (a) at any given moment, all Administrative Claims arising from all accrued fees, transaction fees (including the Success Fees), and expenses for services rendered by all Professionals through and including the Confirmation Date under sections 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code to the extent such fees and expenses have not been paid pursuant to or in accordance with an order of the Bankruptcy Court and regardless of whether a fee application has been Filed for such fees and expenses; or (b) a Claim by an OCP for compensation for services rendered or reimbursement of expenses incurred after the Petition Date and on or before the Effective Date pursuant to the OCP Order.  To the extent that the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

169.     "*Professional Fee Account*" means a non-interest-bearing escrow account held and maintained by the Liquidating Trustee and funded by the Debtors or the Post-Effective Date Debtors, as applicable, in an amount equal to the Professional Fee Reserve Amount no later the Effective Date.

170.     "*Professional Fee Reserve Amount*" means the aggregate amount of all estimated accrued and unpaid Professional Fee Claims (whether billed or unbilled) prior to and as of the Effective Date.

171.     "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in these Chapter 11 Cases by the applicable Bar Date.

172.     "*Qualified Holder*" means a Holder of an Allowed General Unsecured Claim or an Allowed Non-Recourse Claim who has delivered the Certification Form to the Debtors on or prior to the Certification Deadline stating that such Holder is an "accredited investor" as defined in Regulation D under the Securities Act; *provided*, *however*, that, notwithstanding anything contained in the Plan or the Confirmation Order to the contrary, each Plan Sponsor shall be deemed a Qualified Holder regardless of whether it has delivered the Certification Form to the Debtors.

173.     "*Refinancing Exit Capital Facility*" has the meaning set forth in Article III.B.3.

174.     "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim or Interest entitles the Holder of such Claim or Interest so as to leave such Claim or Interest Unimpaired or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of a Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default (i) curing any such default that occurred before, on, or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured, (ii) reinstating the maturity (to the extent such maturity has not otherwise accrued by the passage of time) of such Claim or Interest as such maturity existed before such default, (iii) compensating the Holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law, (iv) if such Claim or Interest arises from a failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim or Interest (other than the Debtors or an insider) for any actual pecuniary loss incurred by such Holder as a result of such failure, and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim or Interest entitles the Holder.

175.     "*Rejection Damages Bar Date*" has the meaning set forth in the Bar Date Order.

176.     "*Related Parties*" means, with respect to a Person or an Entity, each of, and in each case solely in its capacity as such, such Entity's current and former Affiliates, and such Entity's and such Affiliates' current and former directors, board observers, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds (including any beneficial holders for the account of whom such funds are

19

managed), predecessors, participants, successors, assigns, representatives, subsidiaries, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, actuaries, consultants, representatives, and other professionals and advisors and any such person's or Entity's respective heirs, executors, estates, and nominees.

177.    "*Released Party*" means each of the following, and in each case solely in its capacity as such:  (a) the Debtors; (b) the Post-Effective Date Debtors; (c) the Committee and each of its members; (d) the Plan Sponsors; (e) each DIP Lender and its/their applicable agent; (f) the Prepetition Secured Parties (as defined in the DIP Orders); and (g) with respect to each of the foregoing Entities in clauses (a) through (f), such Entity's Related Parties; *provided, however,* that an Entity that affirmatively elects to "opt out" of being a Releasing Party by timely objecting to Confirmation or by checking the appropriate box on such Holder's timely and properly submitted Ballot or Opt-Out Form, thereby indicating that such Holder elects to opt out of the Third Party Release, shall not be considered a "Released Party" notwithstanding anything to the contrary herein.

*178.*    "*Releasing Party*" means each of the following, and in each case solely in its capacity as such:  (a) the Committee and each of its members; (b) the Plan Sponsors; (c) each DIP Lender and its/their applicable agent; (d) the Prepetition Secured Parties (as defined in the DIP Orders); (e) each Holder of a Claim entitled to vote to accept or reject the Plan that does not affirmatively elect to "opt out" of being a Releasing Party by (i) checking the appropriate box on such Holder's timely and properly submitted Ballot to indicate that such Holder elects to opt out of the Third Party Release or (ii) timely filing an objection to the Third Party Release; (f) each Holder of a Claim or Interest in a Nonvoting Class that does not affirmatively elect to "opt out" of being a Releasing Party by (i) checking the appropriate box on such Holder's timely and properly submitted Opt-Out Form to indicate that such Holder elects to opt out of the Third Party Release or (ii) timely filing an objection to the Third Party Release; and (g) with respect to each of the foregoing Entities in clauses (a) through (f), such Entities' Related Parties.

179.    "*Retained Causes of Action*" means all Causes of Action of the Debtors or the Estates not expressly released under the Plan, including as indicated on the Schedule of Retained Causes of Action, including (a) the Antitrust Litigation Claims, and (b) the Sprouts Farmers Market Litigation Claims, including any litigation in or appeals of the Sprouts Adversary Proceeding; *provided*, *however*, that, notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, the Retained Causes of Action shall not include any claim or Cause of Action of the Debtors or the Post-Effective Date Debtors, as applicable, against the DIP Agent, any DIP Lender, or any Plan Sponsor.

180.    "*Return Threshold A Amount*" means, as of any measurement date, an amount equal to the product of (a) 1.925 *multiplied by* (b) the GUC Recovery Threshold.

181.    "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means a schedule of Executory Contracts and Unexpired Leases to be assumed and/or assigned pursuant to the Plan, which shall be in form and substance acceptable to the Debtors, the Plan Sponsors, the

20

DIP Agent, and the Committee (such acceptance not to be unreasonably withheld, conditioned, or delayed).

182. "*Schedule of Retained Causes of Action*" means a schedule of certain Causes of Action, including the Retained Causes of Action, that are not released, exculpated, or waived pursuant to the Plan or otherwise, as the same may be amended, modified, or supplemented (including via the Plan Supplement) from time to time, which shall be in form and substance acceptable to the Debtors, the Plan Sponsors, the DIP Agent, and the Committee (such acceptance not to be unreasonably withheld, conditioned, or delayed).

183. "*Schedules*" means, collectively, the schedule of assets and liabilities and statement of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code, the Bankruptcy Rules, and the official bankruptcy forms, as the same may be amended, modified, or supplemented from time to time.

184. "*Section 510(b) Claim(s)*" means a Claim or Cause of Action against any of the Debtors (a) arising from rescission of a purchase or sale of shares, notes, or any other Securities of any of the Debtors or an Affiliate of any of the Debtors, (b) for damages arising from the purchase or sale of any such Security, (c) for violations of the Securities laws, misrepresentations, or any similar Claims related to the foregoing or otherwise subject to subordination under section 510(b) of the Bankruptcy Code, (d) for reimbursement, contribution, or indemnification allowed under section 502 of the Bankruptcy Code on account of any such Claim, including Claims based upon allegations that the Debtors made false and misleading statements or engaged in other deceptive acts in connection with the offer or sale of Securities, or (e) for attorneys' fees, other charges, or costs incurred on account of any of the foregoing Claims or Causes of Action.

185. "*Secured*" means a Claim that is (a) secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Final Order of the Bankruptcy Court, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan, or separate Final Order of the Bankruptcy Court, as a secured claim.

186. "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a-77aa, together with the rules and regulations promulgated thereunder, as amended from time to time, or any similar federal, state, or local law.

187. "*Securities Exchange Act*" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78nn, as now in effect and hereafter amended, or any similar federal, state, or local law.

188. "*Security*" means any security, as defined in section 2(a)(1) of the Securities Act.

189. "*Settlement Orders*" means, collectively, the JBS Settlement Order and the Pilgrim's Pride Settlement Order.

190. "*Settlement Payments*" means, collectively, the JBS Settlement Consideration and the Pilgrim's Pride Settlement Payment.

21

191.    "*Solicitation Materials*" means the solicitation materials, in form and substance acceptable to the Debtors, the Plan Sponsors, the Committee, and the DIP Agent, provided by the Claims and Noticing Agent to the parties entitled to vote to accept or reject the Plan.

192.    "*Solicitation Order*" means the order (and all exhibits thereto) entered by the Bankruptcy Court approving the Disclosure Statement and the solicitation materials, and allowing solicitation of the Plan to commence (as amended, modified, or supplemented from time to time in accordance with the terms thereof), in form and substance acceptable to the Debtors, the Plan Sponsors, the DIP Agent, and the Committee.

193.    "*Solicitation Procedures Motion*" means the motion Filed by the Debtors seeking, among other things, entry of an order approving the solicitation procedures, conditional approval of the Disclosure Statement, and scheduling the Confirmation Hearing to consider final approval of the Disclosure Statement and a hearing to consider Confirmation of the Plan.

194.    "*Sprouts Adversary Proceeding*" means the adversary proceeding pending in the Bankruptcy Court captioned In re Harvest Sherwood Food Distributors, Inc. v. Sprouts Farmers Market, Inc., SFM LLC D/B/A Sprouts Farmers Market, and John Doe Defendants 1–200, Adv. No. 25-080022-sgj.

195.    "*Sprouts Farmers Market Litigation Claims*" means those certain claims held by the Debtors asserted in the Sprouts Adversary Proceeding.

196.    "*Statutory Fees*" means all fees due and payable pursuant to section 1930 of Title 28 of the United States Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the United States Code, to the extent applicable.

197.    "*Subordinated Claim*" means a Claim or Cause of Action against any of the Debtors subject to subordination to General Unsecured Claims under section 510 of the Bankruptcy Code, including Section 510(b) Claims and Claims subordinated under the principles of equitable subordination pursuant to section 510(c) of the Bankruptcy Code.

198.    "*Success Fees*" means those certain fees payable under the Meru Engagement Letter and Hilco Engagement Letter on account of distributions to Holders of General Unsecured Claims.

199.    "*Third Party Release*" means the release of Claims or Causes of Action provided by the Releasing Parties to the Released Parties, as set forth in Article VIII.B herein.

200.    "*U.S. Trustee*" means the Office of the United States Trustee for the Northern District of Texas.

201.    "*Unexpired Lease*" means a nonresidential lease to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 or 1123 of the Bankruptcy Code.

202.     "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class consisting of Claims or Interests that are not impaired within the meaning of section 1124 of the Bankruptcy Code.

203.     "*Unliquidated*" means, when used in reference to a Claim, any Claim, the amount of liability for which has not been fixed, whether pursuant to an agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

204.     "*Voting Deadline*" means the date and time by which all Ballots to accept or reject the Plan must be received to be counted, which shall be July 6, 2026 at 4:00 p.m. (prevailing Central Time) (subject to extension with the consent of the Plan Sponsors, the Debtors, the DIP Agent, and the Committee).

205.     "*Wind-Down*" means, from and after the Effective Date, the process to wind down and dissolve the Estates in accordance with the Plan, as described in more detail in Article IV.B herein.

## B.     Rules of Interpretation.

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in or exhibit to this Plan, as the same may be amended, waived, or modified from time to time in accordance with the terms hereof.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein and have the same meaning as "in this Plan," "of this Plan," "to this Plan," and "under this Plan," respectively.  The words "includes" and "including" are not limiting.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or plural, shall include both the singular and plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (d) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed, shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with the Plan or the Confirmation Order, as applicable; (e) any reference to an Entity as Holder of a Claim or Interest includes that Entity's successors and assigns; (f) subject to the provisions of any contract, charters, bylaws, partnership agreements, limited liability company agreements, operating agreements, or other organizational documents or shareholders' agreements, as applicable, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (g) any immaterial effectuating provisions may be interpreted by the Debtors or Liquidating Trustee in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other entity; and (h) any term used in capitalized form herein that is not otherwise defined but that

23

is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

### C.    Computation of Time.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.  Any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter unless otherwise specified herein.

### D.    Reference to Monetary Figures.

All references in this Plan to monetary figures shall refer to the legal tender of the United States of America unless otherwise expressly provided.

### E.    Reference to the Debtors or the Post-Effective Date Debtors.

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Post-Effective Date Debtors shall mean the Debtors and the Post-Effective Date Debtors as applicable, to the extent the context requires.

### F.    Controlling Document.

In the event of an inconsistency between this Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control unless otherwise specified in such Plan Supplement document.  In the event of an inconsistency between this Plan and any other instrument or document created or executed pursuant to this Plan, or between this Plan and the Disclosure Statement, this Plan shall control.  The provisions of this Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided* that, if there is determined to be any inconsistency between any provision of this Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of this Plan.

### ARTICLE II.
### ADMINISTRATIVE CLAIMS,
### PRIORITY TAX CLAIMS, AND STATUTORY FEES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including Professional Fee Claims) and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

### A.    Administrative Claims.

Except with respect to Other Administrative Claims, and except to the extent that (a) an Administrative Claim has already been paid during the Chapter 11 Cases or (b) a Holder of an Allowed Administrative Claim agrees to a less favorable treatment, on the applicable Distribution Date, each Holder of an Allowed Administrative Claim shall receive, in full and final satisfaction,

24

settlement, discharge, and release of such Claim, treatment in a manner consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

Notwithstanding any prior Filing or Proof of Claim, Proofs of Claim seeking the allowance and payment of Administrative Claims (except with respect to Other Administrative Claims) must be Filed and served on the Debtors or the Liquidating Trustee (as applicable) and their counsel by no later than the Administrative Claims Bar Date pursuant to the procedures set forth in the Confirmation Order and the notice of the occurrence of the Effective Date. The burden of proof for the allowance of Administrative Claims (other than the DIP Lender Expenses and Exit Capital Fees) remains on the Holder of the Administrative Claims.

**Except as otherwise provided in Articles II.B, II.C, or II.D herein, Holders of Administrative Claims that do not File and serve a Proof of Claim or application for payment of administrative expenses requesting the allowance of an Administrative Claim by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting Administrative Claims against the Debtors, the Liquidating Trust, the Liquidating Trustee, the Estates, or the Debtors' or the Liquidating Trust's assets and properties, and any Administrative Claims shall be deemed disallowed as of the Effective Date unless otherwise ordered by the Bankruptcy Court.**

For the avoidance of doubt, the U.S. Trustee shall not be required to file an application for payment of an Administrative Claim for any Statutory Fees incurred during the pendency of these Chapter 11 Cases.

### B.   DIP Lender Expenses.

The DIP Lender Expenses shall constitute Allowed Administrative Claims and shall be paid in full in Cash no later than the Effective Date and without any requirement to File a Proof of Claim or fee application with the Bankruptcy Court or for the Bankruptcy Court's review or approval. The DIP Lender Expenses shall not be discharged, modified, or otherwise affected by the Plan and shall not be subject to disgorgement, setoff, disallowance, impairment, challenge, contest, attack, rejection, recoupment, reduction, defense, counterclaim, subordination, recharacterization, avoidance, or other claim or cause of action of any nature under the Bankruptcy Code or applicable non-bankruptcy Law.

### C.   Exit Capital Fees.

The Exit Capital Fees shall constitute Allowed Administrative Claims and shall be paid in full in Cash no later than the Effective Date and without any requirement to File a Proof of Claim or fee application with the Bankruptcy Court or for the Bankruptcy Court's review or approval. The Exit Capital Fees shall not be discharged, modified, or otherwise affected by the Plan and shall not be subject to disgorgement, setoff, disallowance, impairment, challenge, contest, attack, rejection, recoupment, reduction, defense, counterclaim, subordination, recharacterization, avoidance, or other claim or cause of action of any nature under the Bankruptcy Code or applicable non-bankruptcy Law.

D.      **Professional Fee Claims.**

1.      Final Fee Applications and Payment of Professional Fee Claims.

All Professionals (other than OCPs) seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 327, 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 1103 of the Bankruptcy Code shall: (a) File, on or before the date that is forty-five (45) days after the Confirmation Date (or such later time agreed to with the Liquidating Trustee) their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred; and (b) be paid in full in Cash, first from the Professional Fee Account, then from any Distributable Cash (including, for the avoidance of doubt, any Cash proceeds of the Exit Capital Facility), in such amounts as are Allowed by the Bankruptcy Court or authorized to be paid in accordance with the order(s) relating to or allowing any such Professional Fee Claim.  Objections to Professional Fee Claims must be Filed and served no later than twenty-one (21) days after the Filing of the Professional Fee Claim.

2.      Administrative Claims of OCPs.

All requests for payment of Professional Fee Claims of OCPs shall be made pursuant to the OCP Order.  To the extent any Professional Fee Claims of the OCPs have not been Allowed pursuant to the OCP Order on or before the Effective Date, the amount of Professional Fee Claims owing to the OCPs shall be paid in Cash to such OCPs by the Debtor or the Liquidating Trustee (as applicable) from the Professional Fee Account as soon as reasonably practicable after such Professional Fee Claims are Allowed pursuant to the OCP Order.

3.      Post-Confirmation Date Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors or Liquidating Trustee (as applicable) shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors or the Liquidating Trustee (as applicable) or the Committee; *provided* that the Plan Sponsors shall receive a copy of any invoice pertaining to such legal, professional, or other fees and expenses no later than five (5) days before the requested date of payment.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or Liquidating Trustee (as applicable) or the Committee may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court; *provided* that the Plan Sponsors shall receive not less than ten (10) days' prior written notice of any such employment and shall receive a copy of any invoice pertaining to such legal, professional, or other fees and expenses no later than ten (10) days before the requested date of payment.

26

4.      Professional Fee Account.

On the Effective Date, the Debtors shall establish (to the extent not already established) and fund the Professional Fee Account with Cash equal to the Professional Fee Reserve Amount, which shall be funded by the Debtors.  The Professional Fee Account shall be maintained in trust solely for the Professionals.  Such funds shall not be considered property of the Estates of the Debtors, the Post-Effective Date Debtors, or the Liquidating Trust.  Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date, and shall deliver such estimate to the Debtors no later than two (2) Business Days before the anticipated Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professionals' final request for payment of Filed Professional Fee Claims.  If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.  The Debtors shall fund and reserve the Professional Fee Account until payment in full of all Allowed Professional Fee Claims.  The amount of Allowed Professional Fee Claims shall be paid in Cash to the Professionals by the Liquidating Trustee  as soon as reasonably practicable after such Professional Fee Claims are Allowed.  Any amount remaining in the Professional Fee Account, after all Allowed Professional Fee Claims have been paid in full, shall promptly be paid to the Liquidating Trust without any further action or order of the Bankruptcy Court. If the Professional Fee Account is insufficient to fund the full Allowed amounts of Professional Fee Claims, the remaining unpaid Allowed Professional Fee Claims shall be paid by the Liquidating Trustee as Allowed Administrative Claims.  For the avoidance of doubt, the Professional Fee Account cannot be used to pay any Secured, Priority, or Administrative Claims until all Professional Fee Claims are satisfied or otherwise reserved for.

**E.      Priority Tax Claims.**

Except to the extent that (a) a Priority Tax Claim has already been paid during the Chapter 11 Cases or (b) a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, discharge, and release of each Allowed Priority Tax Claim, on the applicable Distribution Date, each Holder of an Allowed Priority Tax Claim shall receive an amount of Cash equal to the aggregate amount of such Allowed Priority Tax Claim.  To the extent that any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in accordance with the terms of any agreement between the Liquidating Trustee and the Holder of such Claim, as may be due and payable under applicable nonbankruptcy Law, in the ordinary course of business, or such other treatment in a manner consistent with section 1129(a)(9)(C) of the Bankruptcy Code.

**F.      Statutory Fees.**

The Debtors shall file all preconfirmation monthly reports and pay all preconfirmation Statutory Fees due and payable, pursuant to 28 U.S.C. § 1930(a), on or before the Effective Date.

On and after the Effective Date, the Post-Effective Date Debtors and the Liquidating Trust shall file all quarterly reports and pay all fees payable pursuant to 28 U.S.C. § 1930(a), until the earlier of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

27

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.   Classification of Claims and Interests.

Except for the Claims addressed in Article II herein, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in another Class to the extent that any portion of the Claim or Interest qualifies within the description of such other Class. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and has not been otherwise paid, released, or satisfied at any time.

The classification of Claims against and Interests in the Debtors pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | DIP Claims | Impaired | Entitled to Vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Non-Recourse Claims | Impaired | Entitled to Vote |
| Class 6 | Convenience Class Claims | Impaired | Entitled to Vote |
| Class 7 | Intercompany Claims | Impaired / Unimpaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| Class 8 | Subordinated Claims | Impaired | Entitled to Vote |
| Class 9 | Existing Equity Interests | Impaired | Entitled to Vote |
| Class 10 | Intercompany Interests | Impaired / Unimpaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |

**B.**     **Treatment of Claims and Interests.**

1.     Class 1 – Other Secured Claims.

    *i.*     *Classification*:  Class 1 consists of all Other Secured Claims against the Debtors.

    *ii.*     *Treatment*:  Each Holder of an Allowed Other Secured Claim shall receive, at the option of the Liquidating Trustee, either of the following:

       (a) payment in full in Cash, payable on the later of (x) the Effective Date and (y) the date that is 30 Business Days after the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, in each case, or as soon as reasonably practicable thereafter; or

       (b) Reinstatement or such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

    *iii.*     *Voting*: Class 1 is Unimpaired, and Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1 Other Secured Claims are not entitled to vote to accept or reject the Plan.

2.     Class 2 – Other Priority Claims.

    *i.*     *Classification*:  Class 2 consists of all Other Priority Claims against the Debtors.

    *ii.*     *Treatment*:  Each Holder of an Allowed Other Priority Claim shall receive, at the option of the Liquidating Trustee, any of the following:

       (a) payment in full in Cash as soon as reasonably practicable after becoming Allowed;

       (b) Reinstatement or such other treatment rendering its Allowed Other Priority Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code; or

       (c) other treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code.

    *iii.*     *Voting*: Class 2 is Unimpaired, and Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to

29

section 1126(f) of the Bankruptcy Code.   Therefore, Holders of Class 2 Other Priority Claims are not entitled to vote to accept or reject the Plan.

3.   Class 3 – DIP Claims.

i.   *Classification*:  Class 3 consists of DIP Claims against the Debtors.

ii.   *Allowance*: The DIP Claims shall be Allowed in the aggregate face amount of the then-outstanding amount under the DIP Facility, plus any unreimbursed amounts thereunder, and any accrued but unpaid interest on such unreimbursed amounts through the Effective Date, plus any fees, charges, expenses, reimbursement obligations, indemnification obligations, prepayment premiums, and other amounts due under the DIP Facility.

iii.   *Treatment*:   In accordance with the Exit Capital Commitment Agreement, each Plan Sponsor has agreed to, and shall, have all of its Allowed DIP Claims refinanced by and converted on a dollar-for-dollar basis into obligations under the Exit Capital Facility (the "Refinancing Exit Capital Facility"), upon the terms and subject to the conditions of the Exit Capital Facility, in full and final satisfaction, settlement, discharge, and release of its Allowed DIP Claims; *provided*, *however*, that the DIP Lender Expenses shall be paid in full in Cash in accordance with Article II.B of the Plan; *provided*, *further*, *however*, that the Prepetition Agent Amendment Fee (as defined in the DIP Credit Agreement) and the Arrangement Fee shall be paid in full in Cash on the Effective Date; *provided still further*, *however*, that, upon a Claw-Back Event, any Contingent DIP Claims shall be Allowed, Reinstated, and converted on a dollar-for-dollar basis into obligations under the Contingent Exit Capital Facility; *provided still further*, *however*, that, with the prior written consent of the DIP Agent, each DIP Lender, and the Committee, the Debtors may, in connection with any amendment, modification, or supplement to the Plan, reclassify a portion of the Allowed DIP Claims attributable to the Roll-Up DIP Loans (as defined in the DIP Credit Agreement) as allowed prepetition secured Claims and classify such reclassified Claims in a separate Class under the Plan, with such Class to receive treatment on terms acceptable to the DIP Agent, the Required Lenders, the Plan Sponsors, and the Committee.

iv.   *Voting*:  Class 3 is Impaired, and Holders of DIP Claims are entitled to vote to accept or reject the Plan.

4.      <u>Class 4 – General Unsecured Claims</u>.

    *i.*     *Classification*:   Class 4 consists of General Unsecured Claims against the Debtors.

    *ii.*    *Treatment*: On the Effective Date, except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of such Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive:

       (a) if such Holder makes the Convenience Class Election, treatment in accordance therewith in lieu of the treatment such Holder would otherwise receive pursuant to Class 4 (General Unsecured Claims) as detailed herein;

       (b) if such Holder does not make the Convenience Class Election, (i) if such Holder is a Qualified Holder, its Pro Rata share of the Series B-1 Liquidating Trust Interests or (ii) if such Holder is a Non-Qualified Holder, its Pro Rata share of the Series B-2 Liquidating Trust Interests, each of which will receive distributions pursuant to the Distribution Schedule.

    *iii.*   *Voting*:  Class 4 is Impaired, and Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

5.      <u>Class 5 – Non-Recourse Claims</u>.

    *i.*     *Classification*: Class 5 consists of Non-Recourse Claims against the Debtors.

    *ii.*    *Treatment*: On the Effective Date, except to the extent that a Holder of an Allowed Non-Recourse Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of such Allowed Non-Recourse Claim, each such Holder of an Allowed Non-Recourse Claim shall receive (a) if such Holder is a Qualified Holder, such Holder's Pro Rata share of the Series B-3 Liquidating Trust Interests or (b) if such Holder is a Non-Qualified Holder, its Pro Rata share of the Series B-4 Liquidating Trust Interests, each of which will receive distributions pursuant to the Distribution Schedule.

    *iii.*   *Voting*:  Class 5 is Impaired, and Holders of Non-Recourse Claims are entitled to vote to accept or reject the Plan.

6.     Class 6 – Convenience Class Claims.

  *i.*    *Classification*: Class 6 consists of the Convenience Class Claims against the Debtors.

  *ii.*   *Treatment*: On the Effective Date, except to the extent that a Holder of an Allowed Convenience Class Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of such Allowed Convenience Class Claim, each Holder of an Allowed Convenience Class Claim shall receive an amount of Cash equal to its Pro Rata share of the Convenience Class Cash Pool; *provided*, *however*, that, if Class 6 votes to reject the Plan, each Holder of an Allowed Convenience Class Claim shall receive the same treatment as if its Allowed Convenience Class Claims were Allowed General Unsecured Claims in Class 4.

  *iii.*  *Voting*: Class 6 is Impaired, and Holders of Convenience Class Claims are entitled to vote to accept or reject the Plan.

7.     Class 7 – Intercompany Claims.

  *i.*    *Classification*: Class 7 consists of Intercompany Claims between and among the Debtors.

  *ii.*   *Treatment*: On the Effective Date, or as soon as reasonably practicable thereafter, all Allowed Intercompany Claims shall either be, in the discretion of the Liquidating Trustee and subject to the majority consent of the Liquidating Trust Advisory Board, (x) cancelled, released, extinguished, and otherwise eliminated and Holders of such Intercompany Claims shall not receive any Plan Distributions or retain any interest in property on account of such Intercompany Claims or (y) Reinstated.

  *iii.*  *Voting*: Holders of Class 7 Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

8.     Class 8 – Subordinated Claims.

  *i.*    *Classification*: Class 8 consists of Subordinated Claims against the Debtors.

  *ii.*   *Treatment*: On the Effective Date, except to the extent the Holder of a Subordinated Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of such

32

Allowed Subordinated Claim, each Holder of an Allowed Subordinated Claim shall receive its Pro Rata share of the Series C Liquidating Trust Interests, which will receive distributions pursuant to the Distribution Schedule.

iii. *Voting*: Class 8 is Impaired, and Holders of Subordinated Claims are entitled to vote to accept or reject the Plan.

9. Class 9 – Existing Equity Interests.

i. *Classification*: Class 9 consists of all Existing Equity Interests in Parent.

ii. *Treatment*: On the Effective Date, except to the extent the Holder of an Existing Equity Interest agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of such Allowed Existing Equity Interest, each Holder of an Existing Equity Interest shall receive its Pro Rata share of the Series D Liquidating Trust Interests, which will receive distributions pursuant to the Distribution Schedule.

iii. *Voting*: Class 9 is Impaired, and Holders of Existing Equity Interests are entitled to vote to accept or reject the Plan.

10. Class 10 – Intercompany Interests.

i. *Classification*: Class 10 consists of all Intercompany Interests in the Debtors.

ii. *Treatment*: On the Effective Date, or as soon as reasonably practicable thereafter, all Allowed Intercompany Interests shall either be, in the discretion of the Liquidating Trustee and subject to the majority consent of the Liquidating Trust Advisory Board, (x) cancelled, released, extinguished, and otherwise eliminated and Holders of such Intercompany Interests shall not receive any Plan Distributions or retain any interest in property on account of such Intercompany Claims or (y) Reinstated.

iii. *Voting*: Holders of Class 10 Intercompany Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

33

**C.      Special Provision Governing Unimpaired Claims.**

Except as otherwise provided in this Plan, nothing under this Plan shall affect the rights of the Debtors, the Post-Effective Date Debtors, or the Liquidating Trustee (as applicable) with respect to any Unimpaired Claims, including all legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

**D.      Elimination of Vacant Classes.**

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from this Plan for purposes of voting to accept or reject this Plan, and disregarded for purposes of determining whether this Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

**E.      Voting Classes, Presumed Acceptance by Non-Voting Classes.**

With respect to each Debtor, if a Class contained Claims eligible to vote and no Holder of Claims eligible to vote in such Class votes to accept or reject this Plan, this Plan shall be presumed accepted by the Holders of such Claims in such Class.

**F.      Controversy Concerning Impairment.**

If a controversy arises as to whether any Claim or any Class of Claims is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Hearing.

**G.      Subordination of Claims.**

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, contract, section 510(b) of the Bankruptcy Code, or otherwise. The Debtors or the Liquidating Trustee (as applicable) reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto (including pursuant to section 510(b) of the Bankruptcy Code).

**H.      Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.**

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to this Article III of the Plan. The Debtors request Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Class that is deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. The Debtors reserve the right to request Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any voting Class that votes to reject the Plans.

34

I.      **Insurance.**

Notwithstanding anything to the contrary in the Plan, if any Claim is subject to coverage under an Insurance Policy, payments on account of such Claim will first be made from proceeds of such Insurance Policy in accordance with the terms thereof, with the balance of such Claim, if any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      **General Settlement of Claims and Interests.**

Pursuant to section 1123(b)(2) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions, releases, and other benefits provided pursuant to this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies relating to the contractual, legal, and subordination rights that a Holder may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made on account of such Allowed Claim or Allowed Interest.  The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, Causes of Action, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of such Claims and Interests, and is fair, equitable, and reasonable. Notwithstanding any other provision in the Plan, the settlements are approved among the parties that have agreed to them (among any other party who has expressly entered into a written settlement), and the treatment of Claims and Interests is being afforded pursuant to Confirmation by satisfying the requirements of section 1129 of the Bankruptcy Code.

B.      **Wind-Down.**

Following the Effective Date and subject to the Post-Effective Budget and the Plan, the Liquidating Trustee shall administer the Wind-Down, including winding down the affairs of the Post-Effective Date Debtors and their Estates.  The Post-Effective Budget (a) prior the Effective Date, shall be in substance and form acceptable to the Debtors, the Plan Sponsors, the DIP Agent, and the Committee, and (b) from and after the Effective Date, may be extended and/or modified in accordance with the Liquidating Trust Agreement. The Post-Effective Budget shall include amounts reasonably necessary to (i) compensate the Liquidating Trustee; (ii) pay reasonable professional fees of the Liquidating Trustee; (iii) pay all Allowed Administrative Claims and Allowed Priority Tax Claims, (iv) pay all Allowed Other Secured Claims and Other Priority Claims (as applicable and subject to the treatment of such Claims set forth herein); and (v) pay any other reasonable fees, costs, and expenses to be incurred by the Liquidating Trustee in connection with the Wind-Down.  The Post-Effective Budget shall be funded through the Exit Capital Facility.

35

### C.      Exit Capital Facility.

On the Effective Date, the Post-Effective Date Debtors shall be authorized to enter into the Exit Capital Facility.  The Post-Effective Date Debtors or the Liquidating Trust, as applicable, may use the proceeds of the Exit Capital Facility for any purpose permitted by the Exit Capital Facility Documents.

The Confirmation Order shall constitute approval of the Exit Capital Facility (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by the Post-Effective Date Debtors or the Liquidating Trust (as applicable) in connection therewith) and authorization for the Post-Effective Date Debtors and the Liquidating Trust (as applicable) to enter into and perform under the Exit Capital Facility Documents and such other documents as may be required or appropriate in connection therewith.

The Exit Capital Facility Documents shall constitute legal, valid, binding, and authorized obligations of the Post-Effective Date Debtors and the Liquidating Trust, as applicable, enforceable in accordance with their terms.  The financial accommodations to be extended pursuant to the Exit Capital Facility Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, whether under the Bankruptcy Code or other applicable non-bankruptcy law, and shall not constitute preferential transfers, fraudulent transfers, obligations, or conveyances, or other voidable transfers or obligations under the Bankruptcy Code or any other applicable non-bankruptcy Law.

On the Effective Date, on and subject to the terms and conditions of any definitive documentation, the Plan Sponsors shall provide the Exit Capital Facility.  The Exit Capital Facility shall consist of (i) the Refinancing Exit Capital Facility; (ii) the New-Money Exit Capital Facility; and (iii) the Contingent Exit Capital Facility.  On the Effective Date, each Plan Sponsor shall receive its pro rata share of the Series A Liquidating Trust Interests based on such Plan Sponsor's share of the Exit Capital Commitments.

### D.      Exit Capital Marketing Process.

Prior to the Voting Deadline, the Debtors will solicit alternative proposals for the provision of exit financing sufficient to (i) compensate the Liquidating Trustee; (ii) pay reasonable professional fees of the Liquidating Trustee; (iii) pay all Allowed Administrative Claims (including the DIP Claims), Allowed DIP Claims, and Allowed Priority Tax Claims, (iv) pay all Allowed Other Secured Claims and Other Priority Claims (as applicable and subject to the treatment of such Claims set forth herein); and (v) pay any other reasonable fees, costs, and expenses to be incurred by the Liquidating Trustee in connection with the Wind-Down.  Any alternative proposal must (a) be submitted in writing to (1) the Debtors, (2) the Plan Sponsors, (3) the Committee, and (4) the DIP Agent, such that it is actually received by such parties prior to the Voting Deadline; and (b) satisfy the requirements for an Alternative Transaction set forth in the Exit Capital Commitment Agreement.  To the extent the Debtors select an alternative proposal that satisfies the requirements for an Alternative Transaction set forth in the Exit Capital

36

Commitment Agreement, the definitive terms and documentation with respect to such proposal shall be filed in advance of the Voting Deadline.

### E.    Liquidating Trust.

#### 1.    Interests in Liquidating Trust

Any and all interests in the Liquidating Trust will not, and are not intended to, constitute "securities" and will not be registered pursuant to the Securities Act, as amended, or any state securities law. However, if it should be determined that interests in the Liquidating Trust constitute "securities," the exemption provisions of section 1145 of the Bankruptcy Code will apply to the interests in the Liquidating Trust. Any and all interests in the Liquidating Trust shall not be certificated, shall be subject to certain restrictions, and all interests shall be non-transferable other than if transferred by will, intestate succession, or otherwise by operation of law.

The Liquidating Trust Agreement shall provide for the creation of seven series of beneficial interests in the Liquidating Trust (collectively the "Liquidating Trust Interests"): Series A (Exit Claims), Series B-1 (Qualified Holder General Unsecured Claims), Series B-2 (Non-Qualified Holder General Unsecured Claims), Series B-3 (Qualified Holder Non-Recourse Claims), Series B-4 (Non-Qualified Holder Non-Recourse Claims), Series C (Subordinated Claims), and Series D (Existing Equity Interests) and shall provide for distributions to each series in accordance with the terms of the Liquidating Trust Agreement and as detailed further herein. Each Holder of Allowed Claims or Allowed Interests shall receive the applicable series of Liquidating Trust Interests based on the amount of such Holder's corresponding Allowed Claim or Allowed Interest, relative to the aggregate amount of Allowed Claims or Allowed Interests in such series; *provided*, *however*, that the Plan Sponsors shall receive the Series A Liquidating Trust Interests in accordance with Article IV.C of the Plan. Notwithstanding anything to the contrary herein, each series of Liquidating Trust Interests (other than the Series A Liquidating Trust Interests) shall not be issued to Holders of Allowed Claims or Allowed Interests until the first Distribution Date under the Plan, at which time such Liquidating Trust Interests shall be deemed issued and outstanding immediately prior to such distribution for purposes of evidencing an entitlement to distributions under the Plan and the Liquidating Trust Agreement.

The Series A, Series B-1, and Series B-3 Liquidating Trust Interests shall be transferable except as set forth herein; *provided* that, with respect to any proposed transfer of such Liquidating Trust Interests, the Liquidating Trust Agreement will provide that (i) other than transfers to a Plan Sponsor, the proposed transferee must deliver to the Liquidating Trustee a written certification that it is an "accredited investor" as defined in Regulation D under the Securities Act and (ii) other than transfers to or from a Plan Sponsor, any such transfer shall be subject to the Plan Sponsors' right to (a) receive prior written notice of such transfer and (b) exercise a right of first refusal to purchase all or a portion of the Liquidating Trust Interests that are the subject of such transfer. The Series B-2, Series B-4, Series C, and Series D Liquidating Trust Interests shall not be transferable except to one or more of the Plan Sponsors. Notwithstanding the foregoing, the Liquidating Trust Agreement shall provide that (i) no transfer by a holder of a Liquidating Trust Interest that causes the Liquidating Trust to be required to file reports with the Securities and Exchange Commission pursuant to sections 13(a) or 15(d) of the Securities Exchange Act shall be permitted and any such transfer shall be void *ab initio*, (ii) the Liquidating Trustee, with the consent of the Liquidating

37

Trust Advisory Board, shall be entitled to enforce these transfer restrictions (including by denying any requested transfer in violation of such restrictions), and (iii) the Liquidating Trustee, with the consent of the Liquidating Trust Advisory Board, may impose certain transfer restrictions designed to prevent the Liquidating Trust from becoming subject to the reporting requirements of the Securities Exchange Act and the Trust Agreement may be amended to make such changes as are deemed necessary or appropriate by the Liquidating Trustee, with the consent of the Liquidating Trust Advisory Board, to ensure that the Liquidating Trust is not subject to registration and/or reporting requirements of the Securities Act, the Securities Exchange Act, the Trust Indenture Act of 1939, as amended, or the Investment Company Act of 1940, as amended.

## 2.    Distribution Schedule

On and after the Effective Date, Distributable Cash shall be allocated pursuant to the Liquidating Trust Agreement in accordance with the below schedule (the "Distribution Schedule"):

(i) *first*, one hundred percent (100%) pro rata to holders of the Series A Liquidating Trust Interests until such holders have received Distributable Cash in an amount in the aggregate equal to the GUC Recovery Threshold;

(ii) *second*, (a) seventy-four percent (74%) pro rata to holders of the Series A Liquidating Trust Interests and (b) twenty-six percent (26%) to the Junior Distribution Holders until holders of the Series A Liquidating Trust Interests have received Distributable Cash in an amount in the aggregate equal to the Return Threshold A Amount;

(iii) *third*, (a) twenty-two and a half percent (22.5%) pro rata to holders of the Series A Liquidating Trust Interests and (b) seventy-seven and a half percent (77.5%) to the Junior Distribution Holders until holders of the Series B-1, Series B-2, Series B-3, and Series B-4 Liquidating Trust Interests have been paid in full in accordance with the Plan and the Liquidating Trust Agreement; and

(iv) *fourth*, (a) eighty percent (80%) pro rata to holders of the Series A Liquidating Trust Interests and (b) twenty percent (20%) to the Junior Distribution Holders.

Notwithstanding the foregoing or anything to the contrary in the Plan, upon the occurrence of a Claw-Back Event, the Distribution Schedule shall be modified, solely with respect to Antitrust Litigation Claim Proceeds, as follows:

(i) *first*, the Contingent Exit Capital Facility shall be drawn in an amount necessary to, and the proceeds shall be used to, satisfy the amount payable to the Capital Providers, as determined by Final Order, subject to the terms and limitations of the Exit Capital Facility Documents; and

(ii) *second*, solely with respect to Antitrust Litigation Claim Proceeds and only until the Capital Providers have been paid in full on account of their interest therein (including any applicable interest or other amounts payable to the Capital Providers), if any, as determined by a Final Order, (a) fifty percent (50%) pro rata

38

to holders of the Series A Liquidating Trust Interests and (b) fifty percent (50%) pro rata to holders of the Series B-3 and Series B-4 Liquidating Trust Interests.

(i) *third*, one hundred percent (100%) pro rata to holders of the Series A Liquidating Trust Interests until holders of the Series A Liquidating Trust Interests have received Distributable Cash in an amount in the aggregate equal to the Alternate Return Threshold A Amount;

(ii) *fourth*, (a) seventy-four percent (74%) pro rata to holders of the Series A Liquidating Trust Interests and (b) twenty-six percent (26%) to the Junior Distribution Holders until holders of the Series A Liquidating Trust Interests have received Distributable Cash in an amount in the aggregate equal to the Alternate Return Threshold B Amount;

(iii) *fifth*, (a) twenty-two and a half percent (22.5%) pro rata to holders of the Series A Liquidating Trust Interests and (b) seventy-seven and a half percent (77.5%) to the Junior Distribution Holders until holders of the Series B-1, Series B-2, Series B-3, and Series B-4 Liquidating Trust Interests have been paid in full in accordance with the Plan and the Liquidating Trust Agreement; and

(iv) *sixth*, (a) eighty percent (80%) pro rata to holders of the Series A Liquidating Trust Interests and (b) twenty percent (20%) to the Junior Distribution Holders.

3.     Creation and Governance of the Liquidating Trust

i.     *Creation of the Liquidating Trust*

On the Effective Date, the Debtors shall be deemed to transfer to the Liquidating Trust all of their right, title, and interest in and to all of the Liquidating Trust Assets free and clear of all Liens, charges, Claims, encumbrances, and interests, and in accordance with section 1141 of the Bankruptcy Code.  The Liquidating Trust Agreement shall be executed, and the Debtors shall take all steps necessary to establish the Liquidating Trust and beneficial interests therein in accordance with the Plan and the Liquidating Trust Documents.

The execution of the Liquidating Trust Agreement shall be deemed to effect a transfer and assignment to, and vesting in, the Liquidating Trust and its authorized representatives of all attorney-client privileges, work product protections, joint client privilege, mediation privilege, common interest or joint defense privilege or protection, and all other privileges, immunities, or protections from disclosure (collectively, the "Privileges") held by (a) any one or more of the Debtors or (b) any prepetition or postpetition committee or subcommittee of the board of directors or equivalent governing body of any of the Debtors and their predecessors (together, the "Privilege Transfer Parties") related in any way to the Liquidating Trust Assets or the analysis or prosecution of any Liquidating Trust Assets (the "Transferred Privileged Information").  The Transferred Privileged Information shall include documents and information of all manner, whether oral or written, digital or physical, and whether or not previously disclosed or discussed.  The Privileges shall include any right or obligation to preserve or enforce or waive a privilege that arises from

39

any joint defense, common interest, or similar agreement involving any of the Privilege Transfer Parties.

### ii. *Liquidating Trust Agreement and Liquidating Trustee*

The Liquidating Trust Agreement shall (a) be in substance and form acceptable to the Plan Sponsors, the DIP Agent, and the Committee (such acceptance not to be unreasonably withheld, conditioned, or delayed), (b) provide for the appointment of an individual to serve as the Liquidating Trustee and administer to the Liquidating Trust, and (c) be included in the Plan Supplement.  The Liquidating Trust Agreement generally will provide for, among other things, (a) the irrevocable transfer of all of the Debtors' rights, title and interest in all of the Liquidating Trust Assets to the Liquidating Trust and (b) the powers, rights, and duties of the Liquidating Trustee necessary to carry out its responsibilities under the Plan, including (i) the investigation and prosecution of the Retained Causes of Action, (ii) the administration and pursuit of the Liquidating Trust Assets, (iii) procedures for the reconciliation and allowance of Claims and Interests, (iv) distributions under the Plan to Holders of Allowed Claims and Allowed Interests to the extent set forth in the Plan and in the Liquidating Trust Agreement and pursuant to the procedures set forth therein, (v) the retention of professionals to assist and advise the Liquidating Trustee in the performance of its duties, (vi) the payment of and reserve for all expenses of the Liquidating Trust, solely from the Liquidating Trust Assets, to be payable before any Plan Distribution is made to any Person or Entity, (vii) the authority to obtain additional funding in accordance with the terms and conditions set forth in the Liquidating Trust Agreement, in each case with respect to both the amount and the source of such additional funding, and (viii) reasonable and customary provisions for the (1) limitation of liability of the Liquidating Trustee and its professionals, agents, and advisors and (2) indemnification of such persons by the Liquidating Trust.  The Liquidating Trust Agreement may include reasonable and customary provisions utilized in comparable circumstances, including provisions necessary to ensure the continued treatment of the Liquidating Trust as a "liquidating trust" as defined under Treasury Regulations section 301.7701-4(d) that is treated as a grantor trust and the Liquidating Trust Beneficiaries as the grantors and deemed owners thereof for U.S. federal income tax purposes.

The Liquidating Trust shall undertake the liabilities, obligations, and responsibilities of the Post-Effective Date Debtors for all Claims and Interests as set forth in the Plan and the Liquidating Trust Agreement.  Distributions in accordance with the Liquidating Trust Agreement and in accordance with the procedures contemplated therein shall be the sole source of recovery, if any, against the Post-Effective Date Debtors and their Estates in respect of such Claims and Interests, and the Holders of such Claims or Interests shall have no other or further recourse to the Post-Effective Date Debtors or their Estates.  In furtherance of the foregoing, the Liquidating Trust, subject to and only to the extent provided in the Liquidating Trust Agreement, shall have all privileges, defenses, cross-claims, offsets, and recoupments regarding Claims that the Post-Effective Date Debtors have, or would have had, under applicable law, but solely to the extent consistent with the Liquidating Trust Agreement and the Plan.

The Liquidating Trustee shall be responsible for, among other things, (a) administering and paying taxes, including, among other things, filing tax returns and representing the interest and account of the Debtors or the Post-Effective Date Debtors, as applicable, before any taxing authority in all matters; (b) distributing information statements as required for U.S. federal income

tax and other applicable tax purposes; (c) Filing an application for entry by the Bankruptcy Court of a final decree closing the Chapter 11 Cases; and (d) making distributions to Professionals for Allowed Professional Fee Claims from the Professional Fee Account.

The Liquidating Trustee shall have all direct and indirect governance powers with respect to each of the Post-Effective Date Debtors. The Liquidating Trustee shall act for the Debtors and Post-Effective Date Debtors in the same capacity as applicable to a board of directors and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same).

### iii.      Liquidating Trust Advisory Board

On the Effective Date, the Liquidating Trust Advisory Board shall be appointed, pursuant to the Liquidating Trust Agreement, to (a) instruct and supervise the Liquidating Trustee with respect to its responsibilities under the Plan and the Liquidating Trust Agreement and (b) review and approve the decisions of the Liquidating Trustee as set forth in the Liquidating Trust Agreement. The Liquidating Trust Advisory Board will be authorized to take or not take any action with the consent of a majority of its members in accordance with its bylaws; *provided*, *however*, that, if consent is withheld by any member of the Liquidating Trust Advisory Board with respect to a Material Settlement, such member may file an objection to such Material Settlement in the Bankruptcy Court on an expedited basis; *provided*, *further*, that consent shall be deemed granted by any member of the Liquidating Trust Advisory Board that does not respond within ten (10) business days after provision by the Liquidating Trustee of information reasonably sufficient to evaluate such proposed Material Settlement. For the avoidance of doubt, the Liquidating Trustee shall deliver to the Liquidating Trust Advisory Board for consideration all settlement proposals received.

All references to the Liquidating Trust in the Plan and Liquidating Trust Agreement shall also be interpreted to include the Liquidating Trust acting by and through the Liquidating Trustee.

### iv.      Claims Reconciliation

Before the Effective Date, the Debtors may object to Claims. After the Effective Date, the Liquidating Trust shall have the exclusive authority to object to all Claims against the Debtors; *provided* that the Liquidating Trust shall not be entitled to object to any Claim that has been expressly Allowed by Final Order or hereunder. If any objection to a Claim Filed by the Debtors remains pending as of the Effective Date, the Liquidating Trust shall be deemed substituted for the Debtors as the objecting party. Objections to Claims shall be Filed on the Bankruptcy Court's docket on or before the Claims Objection Deadline.

The Liquidating Trust shall be entitled to assert all of the Debtors' or the Post-Effective Date Debtors', as applicable, and the Liquidating Trust's rights, claims, defenses, offsets, rights of recoupment, setoffs, rights of disallowance, subrogation, recharacterization, and/or equitable subordination and counterclaims with respect to Claims and shall be deemed the holder of all applicable privileges of the Debtors or the Post-Effective Date Debtors, as applicable, in connection therewith.

41

On and after the Effective Date, the Liquidating Trust shall have the exclusive authority to File, litigate, compromise, settle, otherwise resolve, or withdraw any objections to Claims, to compromise and settle any such Claims, and to administer and adjust the Claims Register to reflect any such settlement or compromise, in each case, without notice to or approval by the Bankruptcy Court or any other party.

4.      Liquidating Trust Expenses

From and after the Effective Date, the Liquidating Trust shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the Liquidating Trust Expenses, including, but not limited to, reasonable and documented fees and expenses of the Liquidating Trustee and the fees and expenses of any professionals retained by the Liquidating Trustee in accordance with the Plan and the Liquidating Trust Agreement.  The Debtors and the Post-Effective Date Debtors shall not be responsible for any costs, fees, or expenses of the Liquidating Trust.

5.      Tax Treatment

The Liquidating Trust is intended to be treated for U.S. federal income tax purposes in part as a liquidating trust described in Treasury Regulation § 301.7701-4(d) and in part as one or more Disputed Claims reserves treated as disputed ownership funds described in Treasury Regulation § 1.468B-9 (each of which will be taxable as a "qualified settlement fund" if all assets of the Disputed Claims reserve are passive assets for U.S. federal income tax purposes).  For U.S. federal income tax purposes, the transfer of assets by the Debtors to the Liquidating Trust will be treated in part as the transfer of assets by the Debtors to the Holders of Allowed Claims and Allowed Interests, subject to any liabilities of the Debtors or the Liquidating Trust payable from the proceeds of such assets, followed by the deemed transfer of such assets (subject to such liabilities) by such Holders to the Liquidating Trust in exchange for interests in the trust, and in part as the transfer of assets by the Debtors to one more Disputed Claims reserves.  The Holders of Allowed Claims and Allowed Interests will be treated for U.S. federal income tax purposes as the grantors and deemed owners of their respective shares of the assets in the Liquidating Trust (subject to such liabilities), depending on their rights to distributions under the Plan.

As grantors and deemed owners of such assets, the Holders of Allowed Claims and Allowed Interests will be required to include in income their respective shares of the income, deductions, gains, losses, and credits attributable to such assets. The value of such assets will be determined by the Liquidating Trustee as the trustee of the Liquidating Trust, and such values will be used consistently by all parties for all U.S. federal (and applicable state and local) income tax purposes.  Among other things, the Holders of Allowed Claims and Allowed Interests will be required to use the values assigned to such assets by the Liquidating Trustee for all U.S. federal (and applicable state and local) income tax purposes, including the recognition of income, deduction, gain or loss with respect to their Allowed Claims and Allowed Interests and any gain or loss recognized on the subsequent disposition of an asset in which the Holder holds an interest.

The Liquidating Trust Agreement will contain certain provisions intended to comply with IRS guidance for trusts treated as liquidating trusts.  The Liquidating Trust Agreement will (a) require that the Liquidating Trust terminate no later than three years after the Effective Date;

42

*provided*, *however*, if the Bankruptcy Court approves an extension based upon a finding that such an extension is necessary for the Liquidating Trust to complete its liquidating purpose, the term of the Liquidating Trust may be extended one or more times for a finite period not to exceed six months (and such extensions shall not exceed a total of four extensions unless the Liquidating Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the liquidating trust as a grantor trust for U.S. federal income tax purposes, (b) limit the Liquidating Trustee's investment powers, (c) limit the business operations carried on by the Liquidating Trust to activities reasonably necessary to and consistent with the Liquidating Trust's purpose, (d) prohibit the Liquidating Trust from receiving or retaining Cash or Cash equivalents in excess of an amount reasonably necessary to meet Claims and contingent liabilities or to maintain the value of the trust assets during liquidation and (e) distribute at least annually to the Holders of Allowed Claims and Allowed Interests the Liquidating Trust's net income and the net proceeds from the Liquidating Trust Assets in excess of an amount reasonably necessary to meet Claims and contingent liabilities (including Disputed Claims) and to maintain the value of the Liquidating Trust Assets.

Liquidating Trust Assets reserved for Holders of Disputed Claims will be treated as one or more Disputed Claims reserves for U.S. federal income tax purposes, which will be subject to an entity-level tax on some or all of their net income or gain. No Holder of a Claim will be treated as the grantor or deemed owner of an asset reserved for Disputed Claims until such Holder receives or is allocated an interest in such asset. The Liquidating Trustee will file all tax returns on a basis consistent with the treatment of the Liquidating Trust in part as a liquidating trust (and grantor trust pursuant to Treasury Regulation § 1.671-1(a)) and in part as one or more Disputed Claims reserves taxed as disputed ownership funds governed by Treasury Regulation § 1.468B-9 (each of which will be taxable as "qualified settlement fund" if all assets of the Disputed Claims reserve are passive assets for U.S. federal income tax purposes), and will pay all taxes owed from Liquidating Trust Assets.

6. Single Satisfaction of Allowed Claims from the Liquidating Trust

Notwithstanding anything to the contrary herein, in no event shall the Liquidating Trust Beneficiaries recover more than the full amount of their Allowed Claims from the Liquidating Trust except as provided in the Distribution Schedule.

**F. Preservation of Retained Causes of Action.**

In accordance with and subject to section 1123(b)(3) of the Bankruptcy Code, but subject in all respects to Article VIII of the Plan, the Liquidation Trust shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action belonging to the Debtors or their Estates, whether arising before or after the Petition Date, including any Retained Causes of Action, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Liquidating Trust shall be vested with all rights, powers, and privileges of the Debtors (including the rights and powers of the Debtors under chapter 5 of the Bankruptcy Code) and shall be the only Entity that may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Liquidating Trust Beneficiaries. Notwithstanding anything to the contrary herein, all rights in any Retained Causes of Action shall vest in the Liquidating Trust as of the Effective Date, and may be pursued

43

solely by the Liquidating Trust in accordance with the provisions of this Plan and the Liquidating Trust Agreement. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors, the Post-Effective Date Debtors, or the Liquidating Trust will not pursue any and all available Causes of Action against such Entity. The Debtors, the Post-Effective Date Debtors, or the Liquidating Trust expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court or any other court, including pursuant to Article VIII of the Plan, the Debtors, the Post-Effective Date Debtors, and the Liquidating Trust expressly reserve all Causes of Action for later adjudication and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Article IV.F include (a) any claim or Cause of Action with respect to, or against, a Released Party or Exculpated Party, subject in all respects to Article VIII of the Plan, or (b) any claim or Cause of Action against the DIP Agent, any DIP Lender, or any Plan Sponsor.

In accordance with and subject to section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided herein, any Causes of Action that a Debtor may hold against any Entity shall vest in the Liquidating Trust. The Liquidating Trust, through its authorized agents or representatives (including the Liquidating Trustee), shall retain and may exclusively enforce any and all such Causes of Action. The Liquidating Trustee shall have the exclusive right, authority, and, at the direction of the Liquidating Trust Advisory Board, ability to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing (at the direction of the Liquidating Trust Advisory Board) without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court; *provided* that any settlement, compromise, release, withdrawal, or abandonment of any Cause of Action shall require the consent of the Liquidating Trust Advisory Board. The Liquidating Trust shall be deemed hereby substituted as plaintiff, defendant, or in any other capacity for the applicable Debtors and the Committee, as applicable, in any Causes of Action pending before the Bankruptcy Court or any other court that relates to a Liquidating Trust Asset without the need for filing any motion for such relief.

### G.      Sources of Consideration for Plan Distributions.

The Debtors or the Post-Effective Date Debtors, as applicable, or the Liquidating Trustee, as applicable, shall fund the transactions and distributions under the Plan from the Exit Capital Facility. Each distribution and issuance referred to in this Article IV of the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

**H.    Cancellation of Existing Securities and Agreements.**

Except as otherwise provided in the Plan (including with respect to any Contingent DIP Claims), or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, any certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing or creating indebtedness or obligations of (or ownership interest in) the Debtors that are Reinstated pursuant to the Plan) shall be deemed cancelled, discharged, and of no force or effect, without further action or approval of the Bankruptcy Court.

The obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, indentures, certificates, notes, or other instruments or documents evidencing or creating indebtedness or obligations of the Debtors that are Reinstated pursuant to the Plan, including any Contingent DIP Claims) shall be released and discharged; *provided* that, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the Holder of a Claim or Interest shall also continue in effect to allow such Holder to appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court, including, without limitation, to enforce the respective obligations owed to such parties under the Plan.

Notwithstanding the foregoing, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, the Debtors as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in the Plan shall be deemed null and void and shall be of no force and effect solely in connection with such cancellations, terminations, satisfactions, releases or discharges.  Nothing contained in the Plan shall be deemed to cancel, terminate, release, or discharge the obligation of the Debtors or any of their counterparties under (a) any Executory Contract or Unexpired Lease to the extent such Executory Contract or Unexpired Lease has been assumed or will be assumed by the Debtors or Post-Effective Date Debtors, as applicable, pursuant to a Final Order of the Court or hereunder or (b) any Claims or Interests that are Reinstated pursuant to the terms of the Plan (including any Contingent DIP Claims).

**I.    Effectuating Documents; Further Transactions.**

Upon entry of the Confirmation Order, the Debtors, the Post-Effective Date Debtors, or the Liquidating Trust (as applicable) shall be authorized to execute, deliver, File, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements or documents, and take such acts and actions as may be reasonable, necessary, or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of this Plan and any transactions described in or contemplated by this Plan.  The Debtors, the Post-Effective Date Debtors, the Liquidating Trust, all Holders of Claims receiving distributions pursuant to this

45

Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.  All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate actions required by the Debtors in connection therewith, shall be deemed to have occurred on, and shall be in effect as of, the Effective Date, without any requirement of further action by the security holders, directors, managers, authorized Persons, or officers of the Debtors, the Post-Effective Date Debtors, or the Liquidating Trustee.

## J.    Vesting of Assets.

Except as otherwise provided in the Plan, or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each Estate, all Executory Contracts and Unexpired Leases assumed, but not assigned, by any of the Debtors, and any property acquired by any of the Debtors, including Interests held by the Debtors in non-Debtor subsidiaries, shall vest in the Liquidating Trust, free and clear of all Liens, Claims, charges, or other encumbrances unless expressly provided otherwise by the Plan or the Confirmation Order.  Subject to the terms of this Plan and the Liquidating Trust Agreement, on or after the Effective Date, the Liquidating Trust may use, acquire, and dispose of the Liquidating Trust Assets, and may prosecute, compromise, or settle any Claims and Causes of Action without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by this Plan or the Confirmation Order.

## K.    Section 1146 Exemption from Certain Taxes and Fees.

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Post-Effective Date Debtor or to or from any other Person) of property under the Plan or pursuant to:  (a) the issuance, Reinstatement, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Post-Effective Date Debtors, as applicable; (b) the Wind-Down; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (d) the making, assignment, or recording of any lease or sublease; or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax, fee, or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax, fee, or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146 of the Bankruptcy Code, shall forego the collection of any such tax, fee, or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee, or governmental assessment.

L.    **Corporate Action; Governance.**

On the Effective Date and following satisfaction of the Debtors' or the Post-Effective Date Debtors', as applicable, distribution and funding requirements set forth in the Plan, the Debtors or the Post-Effective Date Debtors, as applicable, shall be dissolved for all purposes unless the Liquidating Trustee determines that dissolution can have any adverse impact on the Liquidating Trust Assets; *provided*, that neither the Debtors or the Post-Effective Date Debtors, as applicable, nor any party released pursuant to Article VIII herein shall be responsible for any liabilities that may arise as a result of non-dissolution of the Debtors or the Post-Effective Date Debtors, as applicable.  The Liquidating Trustee shall submit with the appropriate governmental agencies a copy of the Confirmation Order, which Confirmation Order shall suffice for purposes of obtaining a certificate of dissolution from the applicable secretary of state (or each of their equivalents).

Without limiting the foregoing, on the Effective Date and following satisfaction of, as applicable, the Debtors' or the Post-Effective Date Debtors' distribution and funding requirements set forth in the Plan, the Debtors or the Post-Effective Date Debtors, as applicable, shall have no further duties or responsibilities in connection with implementation of this Plan, and the directors and officers of the Debtors or the Post-Effective Date Debtors, as applicable, shall be deemed to have resigned and the employees of the Debtors or the Post-Effective Date Debtors, as applicable, terminated.  From and after the Effective Date, the Liquidating Trustee shall be authorized to act on behalf of the Estates; *provided* that the Liquidating Trustee shall have no duties other than as expressly set forth in the Plan, the Liquidating Trust Agreement, or the Confirmation Order.

Immediately following the occurrence of the Effective Date, the respective boards of directors, managers, and officers of each of the Debtors shall be terminated and the officers and members of each of the boards of directors and managers of the Debtors shall be deemed to have resigned.

Upon the occurrence of the Effective Date, (a) the Liquidating Trustee shall be deemed appointed to serve as, and authorized to act on behalf of, each of the Post-Effective Date Debtors with the same power and authority as the sole officer, director, or manager of any of the Post-Effective Date Debtors, (b) the Liquidating Trustee shall be appointed to serve as the trustee and administrator of the Liquidating Trust established pursuant to the Plan and the Liquidating Trust Agreement, and (c) the Liquidating Trust shall serve as the sole holder of the New Equity Interest.

The New Equity Interest shall be issued on the Effective Date to the Liquidating Trust, in its capacity as holder of the New Equity Interest pursuant to the Plan, for no consideration in connection with the administration of the Plan.  The issuance of the New Equity Interest is authorized and approved in all respects without the need for any further corporate or similar action by any Person.  The New Equity Interest shall not be transferable to any Person other than to a successor Liquidating Trust in accordance with the Liquidating Trust Agreement.

As soon as reasonably practical after the Confirmation Date, on such date as determined by the Liquidating Trust, the Debtors or the Post-Effective Date Debtors, as applicable, may take any action reasonably designed to simplify the corporate structure of the Debtors or the Post-Effective Date Debtors, as applicable, without the need for (a) a further order of the Bankruptcy

47

Court, (b) any other or further actions to be taken by or on behalf of the Debtors or the Post-Effective Date Debtors, as applicable, or (c) any payments to be made in connection therewith. Such action may include causing any Debtor or Post-Effective Date Debtor to merge with and into any other Debtor or Post-Effective Date Debtor or causing any Debtor or Post-Effective Date Debtor to liquidate or dissolve. The Liquidating Trust and each of the Debtors and Post-Effective Date Debtors, as applicable, may execute and file documents, and take all other actions as each deems appropriate, relating to the allowance of, and to effect the prompt corporate restructuring of the Debtors or the Post-Effective Date Debtors, as applicable, as provided herein without the payment of any fee, tax, or charge and without the need for the filing of reports or certificates.

Upon the occurrence of the Effective Date, each of the Debtor(s) or Post-Effective Date Debtor(s), as applicable, (a) shall be deemed to have withdrawn business operations from any jurisdiction in which they were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal and (b) shall not be liable in any manner to any taxing or other authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.

### M. Dissolution of the Debtors

As of the Effective Date, the Liquidating Trustee shall act as the sole officer, director, manager, and Governing Body, as applicable, of the Post-Effective Date Debtors with respect to their affairs. Subject in all respects to the terms of this Plan, the Liquidating Trustee shall have the power and authority to take any action necessary to wind down and dissolve any of the Post-Effective Date Debtors, and shall: (a) file a certificate of dissolution for any of the Post-Effective Date Debtors, together with all other necessary corporate and company documents, to effect the dissolution of such Post-Effective Date Debtor under the applicable Laws of its state of formation; and (b) complete and file all final or otherwise required federal, state, and local tax returns and shall pay taxes required to be paid for any of the Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the Debtors or their Estates for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax Laws. The filing by the Liquidating Trustee of any of the Post-Effective Date Debtors' certificate of dissolution shall be authorized and approved in all respects without further action under applicable Law, regulation, order, or rule.

### N. Dissolution of the Committee

On the Effective Date, the Committee and any other statutory committee formed in connection with the Chapter 11 Cases shall dissolve automatically and all members thereof (solely in their capacities as such) shall be released and discharged from all rights, duties, and responsibilities arising from, or relating to, the Chapter 11 Cases; *provided*, *however*, that the Committee shall continue to exist and its Professionals shall continue to be retained without further order of the Bankruptcy Court with respect to (a) the preparation and prosecution of any final fee applications of the Committee's Professionals and (b) all final fee applications Filed with the Bankruptcy Court.

**O.      Closing the Chapter 11 Cases.**

The Liquidating Trustee shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases; *provided* that, as of the Effective Date, the Post-Effective Date Debtors may submit separate orders to the Bankruptcy Court under certification of counsel previously provided to the U.S. Trustee closing certain individual Chapter 11 Cases and changing the caption of the Chapter 11 Cases accordingly. Nothing in this Plan shall authorize the closing of any case effective as of a date that precedes the date any such order is entered.  Any request for such relief shall be made on motion served on the U.S. Trustee, and the Bankruptcy Court shall rule on such request after notice and a hearing.  Upon the Filing of a motion to close the last Chapter 11 Case remaining open, the Debtors, the Post-Effective Date Debtors, or the Liquidating Trustee, as applicable, shall File a final report with respect to all of the Chapter 11 Cases.

**P.      Authority to Act.**

Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under this Plan that would otherwise require approval of the stockholders, security holders, officers, directors, or other owners of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable Law of the state(s) in which the Debtors are formed, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, or other owners of the Debtor or notice to, order of, or hearing before, the Bankruptcy Court.

**Q.      Separate Plans.**

Notwithstanding the combination of separate plans for the Debtors set forth in this Plan for purposes of economy and efficiency, this Plan constitutes a separate chapter 11 plan for each Debtor.  Accordingly, if the Bankruptcy Court does not confirm this Plan with respect to one or more Debtors, it may still confirm this Plan with respect to any other Debtor that satisfies the Confirmation requirements of section 1129 of the Bankruptcy Code.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.      Assumption and Rejection of Executory Contracts and Unexpired Leases.**

On the Effective Date, except as otherwise provided herein (which exclusion includes the Indemnification Obligations, the D&O Liability Insurance Policies, the Meru Engagement Letter, the Hilco Engagement Letter, and the Antitrust Counsel Engagement Letters), all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court will be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that are (a) the subject of a motion to assume that is pending on the Confirmation Date or (b) set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases.

Prior to the Confirmation Hearing, the Debtors shall cause Notices of Assumption to be sent to applicable counterparties.  Any objection to the proposed assumption or cure amount by such counterparty must be Filed by no later than the date provided in the Notice of Assumption, Confirmation Order, or any other order of the Bankruptcy Court establishing the date by which such objections must be Filed. The Liquidating Trustee, subject to the terms and conditions set forth in the Liquidating Trust Agreement, reserves the right to amend the Schedule of Assumed Executory Contracts and Unexpired Leases within ninety (90) days after the Effective Date.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption and cure amount.

**B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases.**

If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order results in a Claim, then, unless otherwise ordered by the Bankruptcy Court, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Estates, the Liquidating Trustee, the Liquidating Trust, or any of their respective assets and properties unless a Proof of Claim is Filed with the Claims and Noticing Agent and served upon counsel to the Liquidating Trustee within thirty (30) days of the Effective Date.

The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order; any other Claims held by a party to a rejected Executory Contract or Unexpired Lease shall have been evidenced by a Proof of Claim Filed by the applicable Bar Date or shall be barred and unenforceable.  Claims arising from the rejection of Executory Contracts or Unexpired Leases under the Plan and Confirmation Order shall be classified as General Unsecured Claims and shall, if Allowed, be treated in accordance with the provisions herein.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order that are not timely Filed and served within thirty (30) days of the Effective Date will be disallowed automatically, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee, or any of their respective assets and properties.**

**C.      Preexisting Obligations to the Debtors Under Executory Contracts and/or Unexpired Leases.**

Rejection of any Executory Contract and/or Unexpired Lease pursuant to this Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors, the Post-Effective Date Debtors, the Liquidating Trustee, or the Liquidating Trust (as applicable) under such Executory Contracts and/or Unexpired Leases.  In particular, notwithstanding any non-bankruptcy Law to the contrary, the Debtors, the Post-Effective Date Debtors, the Liquidating Trustee, and the Liquidating Trust (as applicable) expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts and/or Unexpired Leases.

#### D.    D&O Insurance Policies.

Each D&O Liability Insurance Policy (including, without limitation, any "tail policy" and all agreements, documents, or instruments related thereto) shall be treated as an Executory Contract under the Plan and shall be assumed, in its entirety, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date, pursuant to sections 105, 365, and 1123 of the Bankruptcy Code.  For the avoidance of doubt, coverage for defense and indemnity under the D&O Liability Insurance Policies shall remain available to all individuals within the definition of "Insured" in the D&O Liability Insurance Policies.  In addition, after the Effective Date, all officers, directors, agents, or employees of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of the D&O Liability Insurance Policies (including any "tail" policy) in effect or purchased as of the Effective Date for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions after the Effective Date, in each case, to the extent set forth in the D&O Liability Insurance Policies.

The Debtors shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policy (including, without limitation, any "tail policy" and all agreements, documents, or instruments related thereto) in effect prior to the Effective Date and shall continue such policies and satisfy their obligations thereunder in full in the ordinary course of business.

#### E.    Engagement Letters.

Each of the Antitrust Counsel Engagement Letters, the Hilco Engagement Letter, and the Meru Engagement Letter as approved by the Bankruptcy Court shall be treated as an Executory Contract under the Plan and shall be assumed, in its entirety (as amended, if applicable, with the prior written consent of the Plan Sponsors, the DIP Agent, and the Committee), without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date, pursuant to sections 105, 365, and 1123 of the Bankruptcy Code.

#### F.    Reservation of Rights.

Neither the exclusion nor the inclusion by the Debtors of any contract or lease on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors, the Post-Effective Date Debtors, or the Liquidating Trustee (as applicable) that any such contract or lease is or is not an Executory Contract or Unexpired Lease or that the Debtors, the Post-Effective Date Debtors, the Liquidating Trustee, or their respective affiliates has any liability thereunder.  Except as explicitly provided in the Plan, nothing in the Plan shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtors, the Post-Effective Date Debtors, the Liquidating Trust, or the Liquidating Trustee under any executory or non-executory contract or unexpired or expired lease.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of its assumption under this Plan, the Liquidating Trustee shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

51

**G.     Indemnity Obligations.**

Each of the Debtors' Indemnification Obligations shall not be discharged, impaired, or otherwise affected by the Plan (except as set forth below).  Any Indemnification Obligations of the Debtors shall be deemed Executory Contracts and assumed by the Post-Effective Date Debtors on the Effective Date.

**H.     Modifications, Amendments, Supplements, Restatements, or Other Agreements.**

Modifications, amendments, supplements, and restatements to a prepetition Executory Contract and/or Unexpired Lease that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**I.     Nonoccurrence of Effective Date.**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

**J.     Employee Compensation and Benefits.**

All employment policies, and all compensation and benefits plans, policies, and programs of the Debtors applicable to their respective employees, retirees, and nonemployee directors, including all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life and accidental death and dismemberment insurance plans, are deemed to be, and shall be treated as, Executory Contracts under this Plan and, on the Effective Date, shall be rejected pursuant to sections 365 and 1123 of the Bankruptcy Code.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

**A.     Disbursing Agent.**

The Disbursing Agent may make all Plan Distributions and shall be empowered to effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan and to exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to carry out its duties.

On the Effective Date, all of the Liquidating Trust Interests shall be registered in the name of the Disbursing Agent on the register of the Liquidating Trust to be held in the name of the Disbursing Agent for the benefit of the Holders of Claims and Interests, to the extent such Claims and Interests are Allowed or become Allowed after the Effective Date.  In the event that the pursuit of the Liquidating Trust Assets results in net proceeds for distributions to holders of the Liquidating Trust Interests, the Liquidating Trust shall pay to the Disbursing Agent all net proceeds

52

distributable on account of the Liquidating Trust Interests in accordance with the Liquidating Trust Agreement.  At such times that the Liquidating Trustee determines in its discretion that there are sufficient net proceeds to make a Plan Distribution, the Disbursing Agent shall distribute such proceeds to Holders of Allowed Claims and Interests in accordance with the Plan and the Liquidating Trust Agreement (including the Distribution Schedule).  Except as otherwise set forth herein, the Debtors, the Post-Effective Date Debtors, or the Liquidating Trust, as applicable, shall be authorized, without further Bankruptcy Court approval, to reimburse any Entity for its reasonable, documented, and customary out-of-pocket expenses incurred in providing post-Confirmation services directly related to Plan Distributions.  If the Distribution Agent is an independent third party designated to serve in such capacity, the Liquidating Trust shall be permitted to provide to such Distribution Agent, without further Bankruptcy Court approval, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable, actual, and documented out-of-pocket expenses incurred in providing post-Confirmation services directly related to Plan Distributions as a Liquidating Trust Expense.  The Disbursing Agent shall not be required to give any bond or surety or other Security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtors.

### B.    Delivery of Distributions and Undeliverable or Unclaimed Distributions.

1.    <u>Record Date for Distribution</u>.

As of the close of business on the Distribution Record Date, the Claims Register shall be closed and the Disbursing Agent shall be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim is transferred twenty (20) or fewer days before the Distribution Record Date, the Disbursing Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.    <u>Delivery of Distributions Generally</u>.

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims and Allowed Interests as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such Plan Distribution; *provided*, *however*, that the manner of such Plan Distribution shall be determined at the discretion of the Liquidating Trustee. Holders of Claims may notify the Disbursing Agent by email of any changes to their address for receipt of distributions.

3.    <u>Undeliverable Distributions and Unclaimed Property</u>.

In the event that any Plan Distribution to any Holder of Allowed Claims or Allowed Interests is returned as undeliverable, no Plan Distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such Plan Distribution shall be made to such Holder without interest; *provided*, *however*, that such Plan Distributions shall be deemed unclaimed property under section 347(b) of the

Bankruptcy Code at the expiration of one (1) year from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the Liquidating Trust automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property Laws to the contrary), and the Claim of any Holder of Claims to such property or interest in property shall be discharged and forever barred and shall not be entitled to any distributions under the Plan.

4.      Surrender of Cancelled Instruments or Securities.

On the Effective Date, each Holder of a certificate or instrument evidencing a Claim or an Interest (other than the Contingent DIP Claims) shall be deemed to have surrendered such certificate or instrument to the Disbursing Agent.  Such surrendered certificate or instrument shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any agreement that governs the rights of the Holder of a Claim or Interest or a trustee or agent under such documents, which shall continue in effect for purposes of allowing Holders to receive Plan Distribution under the Plan and maintaining priority of payment, and to preserve any applicable charging Liens and reimbursement and/or indemnification rights, in each case as set forth in the applicable certificates or instruments. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims or Interests that are Unimpaired or Reinstated under the Plan (including any Contingent DIP Claims).

C.      **Compliance with Tax Requirements.**

In connection with the Plan, any Person issuing any instrument or making any distribution or payment in connection therewith, shall comply with all applicable withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  In the case of a non-Cash distribution that is subject to withholding, the distributing party may require the intended recipient of such distribution to provide the withholding agent with an amount of Cash sufficient to satisfy such withholding tax as a condition to receiving such distribution or withhold an appropriate portion of such distributed property and either (a) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax) or (b) pay the withholding tax using its own funds and retain such withheld property.  The distributing party shall have the right not to make a distribution under the Plan until its withholding or reporting obligation is satisfied pursuant to the preceding sentences. Any amounts withheld pursuant to the Plan shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.

Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the withholding agent or such other Person designated by the Liquidating Trustee the appropriate IRS Form or other tax forms or documentation requested by the Liquidating Trustee to reduce or eliminate any required federal, state, or local withholding.  If the party entitled to receive such property as an issuance or distribution fails to comply with any such request for a one hundred eighty (180) day period beginning on the date after the date such request is made, the amount of such issuance or distribution shall irrevocably revert to the

54

Liquidating Trust and any Claim in respect of such distribution under the Plan shall be discharged and forever barred from assertion against such Debtor, the Liquidating Trustee, or their respective property.

Notwithstanding the above, each Holder of an Allowed Claim or Allowed Interest that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Plan Distribution.

### D.      Date of Distributions.

Distributions made after the Effective Date to Holders of Allowed Claims or Allowed Interests shall be deemed to have been made on the Effective Date.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### E.      Rights and Powers of Disbursing Agent.

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all Plan Distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

#### 1.      Expenses Incurred on or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, to the extent the Disbursing Agent is an Entity other than the Liquidating Trustee, the amount of any reasonable fees and expenses incurred by such Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement Claims (including reasonable attorneys' fees and expenses), made by such Disbursing Agent shall be paid in Cash by the Post-Effective Date Debtors or the Liquidating Trust (as applicable).

### F.      Manner of Payment.

All distributions of Cash to the Holders of the applicable Allowed Claims or Interests under the Plan shall be made by the Disbursing Agent on behalf of the applicable Debtors or Post-Effective Date Debtors.  At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

55

### G.      Foreign Currency Exchange Rate.

As of the Effective Date, any Claim or Interest asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal* on the Petition Date.

### H.      Setoffs and Recoupment.

Except as otherwise expressly provided for in the Plan or the Confirmation Order, the Debtors, the Post-Effective Date Debtor, and the Liquidating Trust, as applicable, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy Law, or as may be agreed to by the Holder of a Claim, may, but shall not be required to, setoff or recoup (to the extent applicable) against any Allowed Claim and any Plan Distribution to be made on account of such Claim, and any and all claims, rights, and Causes of Action of any nature that such Debtor or Post-Effective Date Debtor, as applicable, or the Liquidating Trust (on behalf of such Debtor or Post-Effective Date Debtor), as applicable, may have against the Holder of such Claim pursuant to the Bankruptcy Code or applicable nonbankruptcy Law, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided* that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim shall constitute a waiver, abandonment, or release by such Debtor or Post-Effective Date Debtor, as applicable, or the Liquidating Trust of any such Claims, rights, and Causes of Action that they may have against such Holder.  Except as otherwise specifically provided in the Plan, nothing shall (a) alter any rights of setoff or recoupment (to the extent available under applicable law) of any Holder of an Allowed Claim or Allowed Administrative Claim against the Debtors, the Post-Effective Date Debtors, the Liquidating Trust, or Liquidating Trustee (as applicable), or (b) constitute a waiver of the rights, claims, or defenses of the Debtors, the Post-Effective Date Debtors, the Liquidating Trust, Liquidating Trustee, or any other party in interest to dispute such rights of setoff or recoupment on any grounds.  In no event shall any Holder of a Claim be entitled to set off any such Claim against any Claim, right, or Cause of Action of the Debtor, unless (i) such Holder has indicated in any timely-Filed Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise, or (ii) such Holder was not required to File a Proof of Claim pursuant to a Final Order of the Bankruptcy Court (including the Bar Date Order).

### I.      Minimum Distribution.

No payment of Cash in an amount of less than $250.00 shall be required to be made on account of any Allowed Claim or Allowed Interest.  Such undistributed amount may instead be used in accordance with the Plan and the Post-Effective Budget.  If the Cash available for the final distribution is less than the cost to distribute such funds, the Liquidating Trustee may donate such funds to the unaffiliated charity of its choice.

### J.      Allocations.

Except as otherwise provided in this Plan or as otherwise required by Law, distributions with respect to an Allowed Claim shall be allocated first to the principal portion of such Allowed

Claim (as determined for U.S. federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any.

**K.     Distributions Free and Clear.**

Except as otherwise provided in this Plan, any distribution or transfer made under this Plan, including distributions to any Holder of an Allowed Claim or an Allowed Interest, shall be free and clear of any Liens, Claims, encumbrances, charges, and other Interests, and no other Entity shall have any Interest, whether legal, beneficial, or otherwise, in property distributed or transferred pursuant to this Plan.

**L.     Claims Paid or Payable by Third Parties.**

1.     Claims Paid by Third Parties.

If a Holder of a Claim receives a payment or other satisfaction of its Claim other than through the Debtors or Liquidating Trust on account of such Claim, such Claim shall be reduced by the amount of such payment or satisfaction without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, and if the Claim was paid or satisfied in full other than through the Debtors or the Liquidating Trust, then such Claim shall be disallowed and any recovery in excess of a single recovery in full shall be paid over to the Liquidating Trust without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment or satisfaction from a party that is not the Debtors or the Liquidating Trust on account of such Claim, such Holder shall, within fourteen (14) calendar days of receipt thereof, repay or return the distribution to the Debtors or the Liquidating Trust, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

2.     Claims Payable by Third Parties.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.     Applicability of Insurance Policies.

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Except as set forth in Article VIII herein, nothing in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity, including the Liquidating Trust, may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein

57

constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

### M.    No Postpetition Interest on Claims.

Unless otherwise specifically provided for in the DIP Orders, the Plan, or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy Law, postpetition interest shall not accrue or be paid on any prepetition Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on such Claim.

### ARTICLE VII.
### PROCEDURES FOR RESOLVING
### CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

### A.    Allowance of Claims and Interests.

After the Effective Date, the Liquidating Trust shall have and retain any and all rights and defenses that the Debtors had with respect to any Claim or Interest immediately prior to the Effective Date.

### B.    Claims Administration Responsibilities.

Except as otherwise specifically provided in the Plan, after the Effective Date, the Liquidating Trust shall have the sole authority to: (a) File, withdraw, or litigate to judgment, objections to Claims or Interests; (b) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

### C.    Estimation of Claims and Interests.

Before or after the Effective Date, the Debtors or the Liquidating Trust, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Disputed Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection.

Notwithstanding any provision otherwise herein, a Claim that has been expunged or disallowed from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars ($0.00) unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the Debtors or the Liquidating Trust (as applicable) may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

58

### D.    Adjustment to Claims or Interests Without Objection.

Any Claim or Interest that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors or the Liquidating Trust (as applicable) without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

### E.    Time to File Objections to Claims.

Except as otherwise provided herein, any objections to Claims shall be Filed on or before the Claims Objection Deadline (as such date may be extended upon presentment of an order to the Bankruptcy Court by the Liquidating Trustee or the Debtors).

### F.    Disallowance of Claims or Interests.

Except as otherwise expressly set forth herein, all Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Liquidating Trustee allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be Disallowed if: (a) the Entity, on the one hand, and the Debtors or the Liquidating Trust on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

### G.    Disallowance of Late Claims.

Except as otherwise provided in the Plan, agreed to by the Debtors or the Liquidating Trust, or otherwise approved by the Bankruptcy Court, upon the Effective Date, each Proof of Claim Filed after the applicable Bar Date shall be deemed Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor or Post-Effective Date Debtor or the Liquidating Trust; such Proofs of Claim shall be Disallowed without the need for any objection by the Post-Effective Date Debtors, the Liquidating Trust, or Liquidating Trustee, or any further notice to or action, order, or approval of the Bankruptcy Court and can be expunged from the Claims Register (including by the Claims and Noticing Agent). Holders of such Claims may not receive any Plan Distributions on account of such Claims, unless, on or before the Confirmation Hearing, such late-Filed Claim has been deemed timely Filed by a Final Order or as agreed by the Debtors in writing (email being sufficient).

### H.    Disputed Claims Process.

All Claims held by Persons or Entities against whom or which the Debtor has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed Disputed Claims pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject this Plan. A Claim deemed Disputed pursuant to this Article VII.H shall continue to be Disputed for all purposes until the relevant proceeding against the Holder of such

Claim has been settled or resolved by a Final Order and any sums due to the Debtor or Liquidating Trust from such Holder have been paid.

**I.      Amendments to Claims.**

Except as provided herein, on or after the Effective Date, without the prior authorization of the Bankruptcy Court or the Liquidating Trustee, a Claim may not be Filed or amended and any such new or amended Claim Filed shall be deemed disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

**J.      No Distributions Pending Allowance.**

If an objection to a Claim, Proof of Claim, or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim, Proof of Claim, or portion thereof unless and until the Disputed Claim becomes an Allowed Claim.

**K.      Disputed/Contingent Claims Reserve.**

The Disputed/Contingent Claims Reserve shall be held in trust in a segregated account by the Liquidating Trust for distributions on account of Disputed Claims or Contingent Claims that are subsequently Allowed after such distribution date.  All taxes imposed on assets or income of the Disputed/Contingent Claims Reserve shall be payable by the Disbursing Agent from the assets of the Disputed/Contingent Claims Reserve.  The Liquidating Trust shall be entitled to (i) any Cash held in the Disputed/Contingent Claims Reserve after all Disputed Claims and Contingent Claims have been resolved and (ii) any surplus Cash in the Disputed/Contingent Claims Reserve, which surplus shall be determined by the Liquidating Trustee based on the amount of Disputed Claims and Contingent Claims that remain unresolved as of such date of determination and any such Cash shall constitute Distributable Cash to be distributed pursuant to the Plan.  With respect to any portion of the Disputed/Contingent Claims Reserve that consists of Cash, the Liquidating Trustee shall have the authority to invest such Cash in U.S. Government securities as defined in section 2(a)(16) of the Investment Company Act of 1940 or money market funds containing only such U.S. Government securities.

For the Disputed/Contingent Claims Reserve, the Debtors, Post-Effective Date Debtors, or Liquidating Trust, as applicable, may take the position that grantor trust treatment applies in whole or in part. To the extent such treatment applies to the Disputed/Contingent Claims Reserve, for all U.S. federal income tax purposes, the beneficiaries of the any such account or fund would be treated as grantors and owners thereof, and it is intended, to the extent reasonably practicable, that such Disputed/Contingent Claims Reserve would be classified as a liquidating trust under section 301.7701-4 of the Treasury Regulations. Accordingly, subject to the immediately preceding sentence, if such intended U.S. federal income tax treatment applied, then for U.S. federal income tax purposes the beneficiaries of any such account or fund would be treated as if they had received an interest in such account or fund's assets and then contributed such interests to such account or fund. Alternatively, any such account or fund may be subject to the tax rules that apply to "disputed ownership funds" under 26 C.F.R. 1.468B–9.  If such rules apply, such assets would be subject to entity-level taxation, and the Debtors, the Post-Effective Date Debtors, or the Liquidating Trust (as applicable) would be required to comply with the relevant rules.

60

L.      **Distributions After Allowance.**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim.  No interest shall accrue or be paid on any Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Claim.

### ARTICLE VIII.
### RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      **Debtor Releases.**

**Notwithstanding anything contained in the Plan or Confirmation Order to the contrary, effective as of the Effective Date, pursuant to Section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtors, their Estates, and the Post-Effective Date Debtors, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action, and liabilities whatsoever, including any derivative claims, asserted by or assertable on behalf of any of the Debtors, their Estates, or the Post-Effective Date Debtors, as applicable, whether known or unknown, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, in law (or any applicable rule, statute, regulation, treaty, right, duty or requirement), equity, contract, tort, or otherwise, that the Debtors, their Estates, or the Post-Effective Date Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Company-Related Matters. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any obligations arising pursuant to or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) any Causes of Action included in the Schedule of Retained Causes of Action, or (c) any Claims or Causes of Action arising out of, or related to, any act or omission of a Released Party that is determined by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct.**

61

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan and, further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the claims or Causes of Action released by the Debtor Release; (c) in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after reasonable investigation by the Debtors and after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, their Estates, or the Post-Effective Date Debtors asserting any claim or Cause of Action released pursuant to the Debtor Release.

B.    **Third Party Releases.**

Effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent allowed by applicable law, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all claims, Causes of Action, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, in law (or any applicable rule, statute, regulation, treaty, right, duty or requirement), equity, contract, tort, or otherwise, that such Releasing Party would have been legally entitled to assert in its own right (whether individually or collectively) or otherwise based on or relating to, or in any manner arising from, in whole or in part, the Company-Related Matters. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any obligations arising pursuant to or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) any Causes of Action included in the Schedule of Retained Causes of Action, or (c) any Claims or Causes of Action arising out of, or related to, any act or omission of a Released Party that is determined by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is:  (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the claims or Causes of Action released by the Third Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third Party Release.

62

C.      **Exculpation.**

**Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or the Third Party Release, and except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party hereby is exculpated from any claim or Cause of Action related to, any act or omission in connection with, relating to, or arising out of the negotiation, solicitation, confirmation, execution, or implementation (to the extent on or prior to the Effective Date) of, as applicable, the Company-Related Matters except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, an Exculpated Party shall be entitled to exculpation solely for actions taken from the Petition Date through the Effective Date, and the exculpation set forth above does not exculpate (a) any obligations arising pursuant to or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) any Causes of Action included in the Schedule of Retained Causes of Action, or (c) any Claims or Causes of Action arising out of, or related to, any act or omission of an Exculpated Party that is determined by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct..**

D.      **Injunction.**

**In accordance with section 1141(d)(3) of the Bankruptcy Code, the Plan does not discharge the Debtors. Section 1141(c) of the Bankruptcy Code nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors.**

**Except as otherwise expressly provided in the Plan, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims, Interests, or Causes of Action in or against the Debtors shall be precluded and permanently enjoined, on and after the Effective Date, from taking any of the following actions against the Debtors, the Exculpated Parties, the Released Parties, and any successors, assigns, or representatives of such Persons or Entities, solely with respect to any Claims, Interests, or Causes of Action that will be or are treated by the Plan: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with, or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of, in connection with, or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property of such Entities on account of, in connection with, or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of, in connection with, or with**

respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with, or with respect to any such Claims or Interests released, compromised, or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.

Each Holder of an Allowed Claim, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth herein.

No party may commence, continue, amend, or otherwise pursue, join in, or otherwise support any other party commencing, continuing, amending, or pursuing, a claim or Cause of Action of any kind against the Debtors, the Post-Effective Date Debtors, the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Advisory Board, the Exculpated Parties, or the Released Parties that relates to, or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of, a Cause of Action subject to the releases or exculpations under the Plan without first (a) requesting a determination from the Bankruptcy Court, after notice and a hearing, that such Cause of Action represents a colorable claim against a Debtor, a Post-Effective Date Debtor, the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Advisory Board, an Exculpated Party, or a Released Party and is not a claim or Cause of Action released or exculpated under the Plan, which request must attach the complaint or petition proposed to be filed by the requesting party, and (b) obtaining from the Bankruptcy Court specific authorization for such party to bring such Cause of Action against the Liquidating Trust, the Liquidating Trustee, the Liquidating  Trust Advisory Board or any such Debtor, Post-Effective Date Debtor, Exculpated Party, or Released Party. Any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Cause of Action is colorable and, only to the extent legally permissible, will have jurisdiction to adjudicate the underlying colorable Cause of Action.

E.     Release of Liens.

Except as otherwise provided herein, in any Exit Capital Facility Documents, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security Interests against any property of the

64

Estates shall be fully released and discharged, and all of the right, title, and Interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security Interests shall revert to the Debtors and their successors and assigns.

If any Holder of an Other Secured Claim or any agent for such Holder has filed or recorded publicly any Liens and/or security Interests to secure such Holder's Other Secured Claim, as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Liquidating Trustee that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security Interests, including the making of any applicable filings or recordings, and the Liquidating Trustee shall be entitled to make any such filings or recordings on such Holder's behalf.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

### A. Conditions Precedent to Confirmation.

The occurrence of Confirmation of this Plan is subject to each of the following conditions precedent:

1. the Bankruptcy Court shall have entered the Solicitation Order, in form and substance acceptable to the Debtors, the Plan Sponsors, the DIP Agent, and the Committee, which shall have become a Final Order;

2. the Bankruptcy Court shall have entered the Confirmation Order, in form and substance acceptable to the Debtors, the Plan Sponsors, the DIP Agent, and the Committee, which shall have become a Final Order; and

3. the Exit Capital Commitment Agreement shall remain in full force and effect and shall not have been terminated at any time;

### B. Conditions Precedent to the Effective Date.

The occurrence of the Effective Date of this Plan is subject to each of the following conditions precedent:

1. the Bankruptcy Court shall have entered the Solicitation Order, in form and substance acceptable to the Debtors, the Plan Sponsors, the DIP Agent, and the Committee, which shall have become a Final Order;

2. the Bankruptcy Court shall have entered the Confirmation Order, in form and substance acceptable to the Debtors, the Plan Sponsors, the DIP Agent, and the Committee, which shall have become a Final Order;

3. the Exit Capital Commitment Agreement shall remain in full force and effect and shall not have been terminated at any time;

4.  the Exit Capital Facility Documents shall have been executed and delivered in form and substance acceptable to the Plan Sponsors, the Debtors, the DIP Agent, and the Committee (such acceptance not to be unreasonably withheld, conditioned, or delayed);

5.  all required governmental and third party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions provided for in the Plan shall have been obtained, shall not be subject to unfulfilled conditions, and shall be in full force and effect, and all applicable waiting periods shall have expired without any action having been taken by any competent authority that would restrain or prevent such transactions;

6.  all professional fees and expenses of Professionals already approved by the Bankruptcy Court shall have been paid in full;

7.  the Professional Fee Reserve Amount shall have been funded into the Professional Fee Account;

8.  the unpaid, reasonable, and documented fees and expenses of (a) Latham & Watkins LLP, as counsel to the DIP Agent, (b) Hunton Andrews Kurth LLP, as local counsel to the DIP Agent, (c) Huron Consulting Services LLC, as financial advisor to the DIP Agent, (d) Cleary Gottlieb Steen & Hamilton LLP, as counsel to the DIP Agent / Plan Sponsors, and (e) any other professional retained by the DIP Agent or the Plan Sponsors shall have been paid in full in Cash; *provided*, that payment of any such amounts incurred by such professionals as of the Effective Date but not invoiced to the Debtors shall not be a condition precedent to the effectiveness of the Plan and shall be payable by the Liquidating Trustee within ten (10) days after the receipt of summary invoices therefor (without any requirement (y) to provide itemized time detail or (z) for Bankruptcy Court review or approval (including to File a fee application with the Bankruptcy Court));

9.  the Liquidating Trustee shall have been appointed and assumed its rights and responsibilities under the Liquidating Trust Agreement and the Liquidating Trust shall have been established and funded in accordance with the terms of the Liquidating Trust Agreement, which condition may not be waived;

10. all documents and agreements necessary to implement the Plan, including the Liquidating Trust Agreement, and all other items contained in the Plan Supplement, shall be in form and substance acceptable to the Debtors, the Plan Sponsors, the DIP Agent, and the Committee (other than with respect to the Liquidating Trust Agreement, such acceptance not to be unreasonably withheld, conditioned, or delayed) and shall have been effected or fully executed (as applicable) and remain in full force and effect; and

11. all statutory fees and obligations then due and payable to the U.S. Trustee shall have been paid in full.

### C.     Waiver of Conditions.

The Debtors may, with the consent of the Plan Sponsors, the DIP Agent, and the Committee, waive any one or more of the Conditions Precedent to the Effective Date (other than

the Condition Precedent set forth in Article IX.B.9) without notice, leave, or order of the Court or any formal action other than proceeding to confirm or consummate the Plan.

## ARTICLE X.
## RETENTION OF JURISDICTION

On and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, pursuant to 28 U.S.C. §§ 1334 and 157, over all matters arising in, arising under or related to the Chapter 11 Cases for, among other things, the following purposes:

1. Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests.

2. Resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including Claim Objections, allowance, disallowance, subordination, estimation, and distribution.

3. Decide and resolve all matters related to the granting and denying, in whole or in part of, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan.

4. Resolve any matters related to: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure arising therefrom; and/or (b) any dispute regarding whether a contract or lease is or was executory or expired.

5. Adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date.

6. Adjudicate, decide, or resolve any and all matters related to sections 1141, 1145, and 1146 of the Bankruptcy Code.

7. Adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters.

8. Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement.

9. Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan.

10. Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan.

11. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions.

12. Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated.

13. Enforce or determine any matters, including disputes, that may arise in connection with or related to the Liquidating Trust Agreement, the Exit Capital Facility Documents, the DIP Loan Documents, the Disclosure Statement, the Plan, and the Confirmation Order.

14. Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan.

15. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by any Holder for amounts not timely repaid.

16. Adjudicate any and all disputes arising from or relating to distributions under the Plan.

17. Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order.

18. Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order.

19. Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

20. Hear and determine any Causes of Action that may be brought by the Liquidating Trustee.

21. Hear and determine any other rights, Claims, or Causes of Action held by or accruing to the Debtors or the Liquidating Trustee pursuant to the Bankruptcy Code or any applicable state or federal statute or legal theory, including to recover assets of the Debtors and property of the Debtors' Estates, wherever located.

22. Enter an order or final decree concluding or closing the Chapter 11 Cases.

23. Enforce all orders previously entered by the Bankruptcy Court.

24. Hear any other matter over which the Bankruptcy Court has jurisdiction.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A. Modification and Amendment.

This Plan may be amended, modified, or supplemented by the Debtors, with the prior written consent of the Plan Sponsors, the DIP Agent, and the Committee, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by Law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code. In addition, after the Confirmation Date, the Debtors may remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes of effects of this Plan, and any Holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

### B. Effect of Confirmation on Modifications.

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and shall constitute a finding that such modifications or amendments to the Plan do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### C. Revocation or Withdrawal of Plan.

The Debtors, with the prior written consent of the Plan Sponsors and the DIP Agent (except in connection with the Debtors' exercise of an Alternative Transaction Election), reserve the right to revoke or withdraw this Plan prior to the Effective Date as to any or all of the Debtors. If, with respect to a Debtor, this Plan has been revoked or withdrawn prior to the Effective Date with the prior written consent of the Plan Sponsors and the DIP Agent (except in connection with the Debtors' exercise of an Alternative Transaction Election), then, with respect to such Debtor (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or unexpired leases affected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void; and (c) nothing contained in this Plan shall (i) constitute a waiver or release of any Claim by or against, or any Interest in, such Debtor or any other Person, (ii) prejudice in any manner the rights of such Debtor or any other Person, or (iii) constitute an admission of any sort by any Debtor or any other Person.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

### A. Immediate Binding Effect.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, and in accordance with section 1141 of the Bankruptcy Code, upon the occurrence of the Effective Date, the terms of this Plan shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Post-Effective Date Debtors, the Liquidating Trust, all present and former Holders of Claims against and Interests in any of the Debtors (whether or not

the Claim or Interest of such Holder is Impaired under the Plan and whether or not such Holder has filed a Proof of Claim or voted on this Plan), the Released Parties, the Exculpated Parties, and each of their respective successors and assigns including, but not limited to, the Post-Effective Date Debtors and all other parties-in-interest in the Chapter 11 Cases. All Claims and Interests shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or Interest has voted on the Plan. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

### B.      Additional Documents.

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, the Post-Effective Date Debtors, or the Liquidating Trust (as applicable) and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may reasonably be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

### C.      Substantial Consummation.

On the Effective Date, this Plan shall be deemed to be substantially consummated (within the meaning set forth in section 1101(2) of the Bankruptcy Code) pursuant to section 1127(b) of the Bankruptcy Code.

### D.      Reservation of Rights.

The Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtors with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

### E.      Successors and Assigns.

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and, subject to the terms of the Plan Documents (including the Liquidating Trust Agreement), shall inure to the benefit of any heir, executor, administrator, successor or assign, beneficiaries or guardian, if any, of each Entity.

### F.      Determination of Tax Liabilities.

As of the Effective Date, the Liquidating Trustee will be responsible for preparing and filing any tax forms or returns on behalf of the Debtors' Estates; *provided* that the Liquidating Trustee shall not be responsible for preparing or filing any tax forms for Holders of Interests in the Debtors (which Interests shall be cancelled pursuant to this Plan), but shall provide such Holders with any information reasonably required to prepare such forms.  The Debtors and the Liquidating Trustee shall have the right to request an expedited determination of any tax liability pursuant to

70

section 505 of the Bankruptcy Code, including on any unpaid liability of the Debtors' Estates for any tax incurred during the administration of these Chapter 11 Cases.

### G. Notices.

In order for all notices, requests, and demands to or upon the Debtors, the Plan Sponsors, the DIP Agent, the Committee, and the Liquidating Trustee, as the case may be, to be effective such notices, requests and demands shall be in writing (including by electronic mail) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email, when received, and served on or delivered to the following parties:

| Counsel to the Debtors | Counsel to the Plan Sponsors and the DIP Agent |
|---|---|
| Sidley Austin LLP<br>787 7th Ave<br>New York, NY 10019<br>Attn: Anthony Grossi, Jason Hufendick and Ryan Fink<br>Email: agrossi@sidley.com, jhufendick@sidley.com, ryan.fink@sidley.com | Cleary Gottlieb Steen & Hamilton LLP<br>One Liberty Plaza<br>New York, NY 10006<br>Attn: Sean A. O'Neal and Humayun Khalid<br>Email: soneal@cgsh.com, hkhalid@cgsh.com |
|  | **Counsel to the Committee** |
|  | McDermott Will & Schulte LLP<br>One Vanderbilt Avenue<br>New York, NY 10017<br>Attn: Darren Azman and Steven Szanzer<br>Email: dazman@mcdermottlaw.com, sszanzer@mcdermottlaw.com |

After the Effective Date, Persons or Entities that wish to continue to receive documents pursuant to Bankruptcy Rule 2002 must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Liquidating Trustee is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities that Filed such renewed requests.

### H. Term of Injunctions or Stays.

Except as otherwise provided in this Plan, to the maximum extent permitted by applicable Law and subject to the Bankruptcy Court's post-Confirmation jurisdiction to modify the injunctions and stays under this Plan: (a) all injunctions with respect to or stays against an action against property of the Debtors or the Debtors' Estates arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, and in existence on the date the Confirmation Order is entered, shall remain in full force and effect until such property is no longer property of the Debtors or the Debtors' Estates; and (b) all other injunctions and stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earliest of (i) the date that the Chapter 11 Cases are closed pursuant to a Final Order of the Bankruptcy Court, or (ii) the date that the Chapter 11

71

Cases are dismissed pursuant to a Final Order of the Bankruptcy Court. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect indefinitely.

## I.      Entire Agreement.

On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

## J.      Plan Supplement.

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. Copies of such exhibits and documents shall be made available upon written request to the Debtors' counsel or the Liquidating Trustee's counsel (as applicable) at the address above or by downloading such exhibits and documents free of charge from the Claims and Noticing Agent's website. All documents in the Plan Supplement are considered an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

## K.      Governing Law.

Unless a rule of Law or procedure is supplied by federal Law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the Laws of the state of New York, without giving effect to the principles of conflict of Laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing Law of such agreement shall control), and corporate governance matters; *provided*, *however*, that corporate governance matters related to the Debtors or the Post-Effective Date Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state or other jurisdiction of incorporation of the applicable Debtor or Post-Effective Date Debtor; *provided*, *further*, that this Article XII.K shall have no impact or effect on the law to be applied to the Retained Causes of Action.

## L.      Nonseverability of Plan Provisions.

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with

the foregoing, is the following: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the prior written consent of the Debtors (or the Liquidating Trustee, as applicable), the Plan Sponsors, the DIP Agent, and the Committee; and (c) nonseverable and mutually dependent.

Dated: May 22, 2026

Respectfully submitted,

/s/ *Eric Kaup*

By: Eric Kaup
Chief Restructuring Officer
Harvest Sherwood Food Distributors, Inc.
and each of the Debtors party to this Plan